UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PARACO GAS CORPORATION,

Plaintiff,

-v-

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA, CARNALL
INSURANCE LLC a/k/a FAIRFIELD COUNTY
BANK INSURANCE SERVICES, ALICE
LARA-PIVETZ, and JEFF WELSCH

Defendants.

Case No. 12-CV-5562 (KMK)

OPINION AND ORDER

Appearances:

Robert G. Rafferty, Esq.
The Deiorio Law Group, PLLC
Rye Brook, N.Y.
*Counsel for Plaintiff*

Alexis J. Rogoski, Esq.
Aron M. Zimmerman, Esq.
Boundas, Skarzynski, Walsh & Black LLP
New York, N.Y.
*Counsel for Defendant*
*Travelers Casualty and Surety Company of America*

Thomas A. Catalano, Esq.
Lester Schwab Katz & Dwyer, LLP
New York, N.Y.
*Counsel for Defendant*s
*Carnall Insurance, LLC, Fairfield County Bank Insurance Services,*
*Alice Lara, and Jeffrey Welsch*

KENNETH M. KARAS, District Judge:

Plaintiff Paraco Gas Corporation (hereinafter "Paraco" or "Plaintiff") brings this Action

against Travelers Casualty and Surety Company of America ("Travelers"), Fairfield County

Bank Insurance Services, LLC (formerly known as Carnall Insurance, LLC, and hereinafter "FCBIS"), Alice Lara ("Lara"), and Jeffrey Welsch ("Welsch," and with FCBIS and Lara, collectively "the FCBIS Defendants").[1]  Plaintiff's Second Amended Complaint asserts a number of claims relating to an insurance policy that Paraco purchased from Travelers with the assistance of FCBIS.  FCBIS has also asserted several Cross-claims against Travelers, arguing that Travelers made either negligent or fraudulent misrepresentations, violated state law by engaging in unfair trade and deceptive business practices, and breached the implied covenant of good faith and fair dealing with FCBIS.  FCBIS further claims that the Policy should be reformed and that FCBIS Defendants are indemnified against suit by Paraco under a prior agreement between FCBIS and Travelers.  In the instant Motions, Travelers moves to dismiss both Paraco's Second Amended Complaint and FCBIS's Cross-claims.  For the reasons provided herein, these Motions are granted in part and denied in part.

## I.  BACKGROUND

### A.  Factual Background

Unless otherwise indicated, the following facts are derived from Plaintiff's Second Amended Complaint and accompanying exhibits, (*see* Second Am. Compl. (Dkt. No. 15)), and are assumed to be true for the purposes of the Court's consideration of Defendant Travelers's Motions To Dismiss.

In 2009, Plaintiff retained FCBIS to obtain Directors & Officers liability insurance to replace an expiring policy Paraco had with Chubb Insurance Company.  (Second Am. Compl.

---

[1] Lara and Welsch were listed as "Alice Lara-Pivetz" and "Jeff Welsch" in Plaintiff's Second Amended Complaint.  (Dkt. No. 15.)  The Court will refer to these parties by the names used in their sworn declarations.  (*See* Decl. of Alice Lara ("Lara Decl.") (Dkt. No. 30) and Decl. of Jeffrey Welsch ("Welsch Decl.") (Dkt. No. 31).)

¶¶ 11–12.)  Paraco provided FCBIS with a copy of its expiring policy, which was also provided to Travelers, (*id.* ¶¶ 12,14), in connection with Paraco's application for coverage, (*id.* ¶ 15), along with a list of shareholders and their respective ownership interests in Paraco, (*id.* ¶ 16). This list shows that only one of Paraco's shareholders, the "Grandchildren's Trust" (the "Trust") held less than a 5% interest in the company.  (*Id.* Ex. A, at 15; Second Am. Compl. ¶ 17.)

In the fall of 2009, representatives of FCBIS engaged in a series of communications with Jason E. Hull ("Hull"), an underwriter employed by Travelers, about a possible insurance policy for Paraco.  (Second Am. Compl. ¶¶ 4, 18–22.)  In these exchanges, Hull provided several different insurance coverage proposals.  (*Id.* ¶ 18, 21.)

On October 2, 2009, Hull emailed FCBIS to provide "three different options for the [Paraco] account."  (*Id.* Ex. B, at 10 ("Oct. 2 email").)  In this email, Hull stated that "[t]he first option has the limits as requested but with a 15k retention[,] [t]he second quote matches Chubb [sic] expiring policy[,] and the third option includes ID fraud."  (*Id.*)  Hull also attached a proposal letter containing a more detailed explanation of each of the three quotes.  (*See id.* at 1–6.)  This document notes an "Ownership Percentage Exclusion" of 5% of the named insured (i.e. Paraco) under the "Private D&O Endorsements" for both the first and second quotes.  (*Id.* at 6–7.)  The same day, FCBIS informed Paraco that Travelers offered a policy that matched the coverage of Paraco's expiring Chubb policy.  (Second Am. Compl. ¶ 20.)

On October 20, 2009, Hull provided four proposals for insurance coverage to FCBIS. (*Id.* ¶ 21.)  This document lists an "Ownership Percentage Exclusion" of 5% of the named insured (i.e. Paraco) under the "Private D&O Endorsements" applicable to the first, second, and fourth quotes.  (*See id.* Ex. D, at 8–9.)  Paraco claims that the "second quote" from Hull's October 2, 2009 email with FCBIS "became the 'first quote' attached [to] Hull's October 20,

3

2009 letter." (Second Am. Compl. ¶ 22.) Paraco accepted the first quote from Hull's October 20, 2009 letter, (*id.* ¶ 23), believing that the policy would provide coverage for suits against Paraco's directors and officers by any of its shareholders, (*id.* ¶ 25).

The resulting insurance policy issued by Travelers (the "Policy") includes the endorsement titled "Ownership Percentage Exclusion," which had been contained in the proposals. (Travelers's Mem. Ex. 1, at 61.)[2] This endorsement, discussed in greater detail below, excepts from coverage suits brought by or on behalf of owners of 5% or more of Paraco's shares. (*See id.*) During the applicable time period in this case, only one Paraco shareholder, the Grandchildren's Trust, owned less than 5% of Paraco's shares. (Second. Am. Compl. ¶ 46.) Paraco asserts that it was unaware that the Policy contained the Ownership Percentage Exclusion at the time of the agreement, but claims Travelers and FCBIS knew about the provision. (*Id.* ¶ 26.)

In May 2010, Paraco shareholder Robert Armentano filed suit against Plaintiff in New York State Supreme Court, alleging a breach of fiduciary duty by Paraco's directors and officers (the "Armentano Action"). (*Id.* Ex. E) Armentano, who owned more than 5% of Paraco, (*id.* ¶¶ 42, 46), brought his action on "on behalf of 'all other shareholders of Paraco [that were] similarly situated,'" (*id.* ¶ 45). Paraco notified Travelers of the Armentano Action and requested Travelers defend and indemnify Paraco, (*id.* ¶ 43), but Travelers asserted that the Policy did not

_____

[2] Plaintiff refers to Exhibit A of its original Complaint as the "directors and officers liability insurance policy . . . effective from October 25, 2009 through July 12, 2010," (Compl. ¶ 6 (Dkt. No. 1)), however the dates included in the document suggest it is a renewal policy rather than the original. The "Ownership Percentage Exclusion" endorsement is identical in both Plaintiff's and Travelers's exhibits—including the policy number—with the exception that Plaintiff's version lists an effective date of July 12, 2011 and Travelers's version has an effective date of October 24, 2009. (*Compare* Travelers's Mem. Ex. 1, at 61, *with* Plaintiff's Verified Complaint Ex. A, at 91.)

cover the Armentano Action, presumably because of the Ownership Percentage Exclusion, (*id.* ¶ 44).  This dispute forms the basis for the instant Action.

B.  Procedural Background

Paraco filed a Complaint in the Supreme Court of the State of New York, Westchester County, on June 18, 2012, and served the same on Defendants on June 22, 2012.  (*See* Notice of Removal (Dkt. No. 1).)  Defendants subsequently removed to this Court on July 19, 2012.  (*See id.*)  Paraco twice amended the Complaint, first on December 18, 2012, (*see* Dkt. No. 11), and then again on March 8, 2013, (*see* Second Am. Compl.).  In the Second Amended Complaint, Paraco claims that the Policy should be reformed on grounds of either mutual mistake or fraud, and that Paraco deserves damages due to Travelers's negligent misrepresentations.  Paraco also requests that the Court declare that the existing Policy covers the Armentano Action.  Finally, Paraco asserts claims against the FCBIS Defendants for breach of fiduciary duty and for making false or misleading statements that led to Paraco's damages, but these claims are not at issue here.

On March 13, 2013, Defendant Travelers moved to dismiss Paraco's Second Amended Complaint, (*see* Dkt. No. 16), and filed a Memorandum of Law in Support of its Motion, (*see* "Travelers's Mem." (Dkt. No. 17)).  Paraco filed a Memorandum of Law in Opposition to Travelers's Motion, (*see* "Paraco's Mem." (Dkt. No. 14)), to which Travelers later replied, (*see* "Travelers's Reply Mem." (Dkt. No. 18)).  Lastly, on July 15, 2013, Paraco filed a Supplemental Memorandum of Law in Opposition to Travelers's Motion.  (*See* "Paraco's Supp. Mem." (Dkt. No. 34).)

On April 17, 2013, the FCBIS Defendants filed an Answer to Paraco's Second Amended Complaint in which they raise several affirmative defenses and assert five cross-claims against

Travelers.  (*See* "FCBIS Cross-cl." (Dkt. No. 23).)  Specifically, the FCBIS Defendants claim

that (a) Travelers made either negligent or fraudulent misrepresentations; (b) Travelers engaged

in unfair trade and deceptive business practices in violation of state law; (c) the Policy should be

reformed to delete the ownership exclusion at issue in this suit; (d) the FCBIS Defendants are

indemnified under a prior agency agreement with Travelers; and (e) Travelers breached the

implied covenant of good faith and fair dealing in its agency agreement with the FCBIS

Defendants.  (*See id.*)  On July 15, 2013, Travelers filed a Motion to Dismiss these Cross-claims,

(*see* Dkt. No. 27), along with a supporting memorandum of law, (*see* "Travelers's Cross-claim

Mem." (Dkt. No. 28)).  The FCBIS Defendants filed a Memorandum of Law in Opposition to

Travelers's Motion to Dismiss the Cross-claims, ("FCBIS Mem." (Dkt. No. 32)), along with

supporting Declarations from Thomas Catalano, (*see* "Catalano Decl." (Dkt. No. 29)), Alica

Lara, (Lara Decl.), and Jeffrey Welsch, (Welsch Decl.).  Defendant Travelers filed a Reply

Memorandum of Law in response to the FCBIS Defendants' filings.  ("Travelers's Cross-claim

Reply Mem." (Dkt. No. 33).)

## II.  DISCUSSION

### A.  Standard of Review

In considering a defendant's motion to dismiss pursuant to Rule 12(b)(6), the Court is

required to construe the factual allegations contained in the complaint as true and draw all

reasonable inferences in favor of the plaintiff.  *See Ruotolo v. City of New York*, 514 F.3d 184,

188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to

Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable

inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero*,

572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same).  Moreover, "[i]n adjudicating a Rule 12(b)(6)

motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (noting that the court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" (citing *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000))).

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citations omitted).  Instead, the Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  Plaintiffs must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted)

(quoting Fed. R. Civ. P. 8(a)(2))).

    B.  Analysis

In considering the motions to dismiss both Paraco's and the FCBIS Defendants' claims

against Travelers, the Court will first address Paraco's claim that the Policy covers the

Armentano suit, which has the potential to render moot Paraco's other claims in this action.

Next, the Court will consider Paraco's remaining claims, which overlap with most of the FCBIS

Defendants' cross-claims.  Finally, the Court will consider the cross-claims asserted by the

FCBIS Defendants alone, which largely concern the contractual relationship between FCBIS and

Travelers.

In evaluating Paraco's and the FCBIS Defendants' state-law claims, the Court will apply

New York law.  Paraco is a New York corporation and has its principal place of business in New

York, (*see* Second Am. Compl. ¶ 1); Travelers is authorized to do business in New York and has

its principal place of business in Connecticut, (*see id.*¶ 2); and FCBIS is both a Connecticut

corporation and has offices in Connecticut (*see id.* ¶ 5; FCBIS Cross-cl. ¶ 2).  Although the

Parties have not addressed what law should be applied to their claims, both Plaintiff and

Travelers have assumed that New York law governs, (*see* Paraco's Mem. 9, 11–12; Travelers's

Mem. 9–13, 15–16; Travelers's Reply Mem. 5, 7–10), and the FCIBS Defendants have done the

same, (*see* FCBIS Mem. 7, 10, 12, 16, 17–21), asserting that "[t]he Court need not make a

conflict of law determination . . . since the New York and Connecticut law regarding negligent

misrepresentation and fraud are essentially the same," (*id.* 8–9).  This sort of "implied consent is

. . . sufficient to establish the applicable choice of law."  *Barbagallo v. Marcum LLP*, 820 F.

Supp. 2d 429, 438 (E.D.N.Y. 2011) (quoting *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 514 n.4 (2d Cir. 2001) (internal quotation marks omitted)); *see also A.B. v. Staropoli*, 929 F. Supp. 2d 266, 275 n.15 (S.D.N.Y. 2013) (noting that "all of the briefs assume that New York law governs resolution of the claims" and that "[t]his implied consent suffices to establish the applicable choice of law," (citing *Golden Pac. Bancorp*, 273 F.3d at 514 n.4)).

### 1. The Armentano Action

Paraco asserts that the Armentano Action should be covered by the Policy and requests a declaratory judgment to this effect. (*See* Second Am. Compl. ¶¶ 41–50.) Travelers argues that such a declaration is precluded by law, given the plain language of the Policy, and that the Court should declare the Policy not apply to the Armentano Action.[3] (Travelers's Mem. 14–15.)

The "Ownership Percentage Exclusion" provision limits the applicability of the Policy's directors and officers liability coverage, specifically stating that such coverage

> shall not apply to, and [Travelers] shall have not duty to defend or pay, advance or reimburse Defense Expenses for, any Claim brought, maintained or asserted by or on behalf of or with the assistance or participation of any person or entity which owns or did own directly or beneficially more than 5% of [Paraco].

(Travelers's Mem. Ex. 1, at 61.)

The Armentano Action was brought by Mr. Armentano on behalf of "all other shareholders of Paraco [that are] similarly situated." (Second Am. Compl. ¶ 42, 45 (internal

---

[3] In considering Travelers's Motion To Dismiss, the Court may refer to the Policy, even if not attached to Plaintiff's Complaint, as Plaintiff is seeking relief under the Policy and the Policy is integral to the Complaint. *See Svensson v. Securian Life Ins. Co.*, 706 F. Supp. 2d 521, 525 (S.D.N.Y. 2010) (noting that "although [the] [p]laintiff did not attach the Policy, the Court properly may consider it without converting [the] [d]efendant's motion to one for summary judgment, as the [c]omplaint explicitly refers to, and relies on, the [p]olicy"); *McKevitt v. Mueller,* 689 F. Supp. 2d 661, 665 (S.D.N.Y. 2010) (noting that a court may consider "documents that the plaintiff *relied on in bringing suit* and that are either in plaintiff's possession or that the plaintiff knew of when bringing suit" (emphasis added)).

quotation marks omitted).)  While Paraco acknowledges that Armentano himself is an owner of

5% or more of Paraco, (*see id*. ¶ 42, 46 (identifying Robert Armentano as a "shareholder" and

asserting that "[a]t the applicable period in time, all of the shareholders of [Paraco], except for the

Grandchildren's Trust, owned more than a 5% interest"), Paraco asserts that the Trust does not

own enough shares of Paraco to fall under the Ownership Percentage Exclusion, (*id.* ¶ 46; *see*

*also id*. Ex. A, at 15 (listing shareholder Robert Armentano as owning 15.8% of shares in Paraco

and listing the Trust as owning 4%)), and that the Trust is a "similarly situated shareholder," (*id.* ¶

47).  Accordingly, Paraco reasons, the Policy should not bar coverage for the Armentano Action.

(*Id.* ¶ 48.)  Paraco's argument is undone by the plain language of the Policy.

 "Under New York law, courts bear the responsibility of determining the rights and

obligations of parties under insurance contracts based on the specific language of the policies. . . .

[T]he court may not write into the contract conditions the parties did not insert by adding or

excising terms under the guise of construction, nor may it construe the language in such a way as

would distort the contract's apparent meaning." *Georgitsi Realty, LLC v. Penn-Star Ins. Co.*, 702

F.3d 152, 155 (2d Cir. 2012) (citations and internal quotation marks omitted).  Where a policy

provision is "'clear and unambigious, [it] must be given [its] plain and ordinary meaning, and

courts should refrain from rewriting the agreement.'"  *Horowitz v. AIG*, 498 F. App'x 51, 53 (2d

Cir. 2012) (quoting *Fidelity & Guar. Co. v. Annunziata,* 492 N.E.2d 1206, 1207 (N.Y. 1986)).

The Ownership Percentage Exclusion bars coverage of "any Claim brought, maintained or

asserted by or on behalf of or with the assistance or participation of any person or entity which

owns or did own directly or beneficially more than 5% of [Paraco]."  Paraco itself asserts that the

Armentano Action was brought by a party who owns more than 5% of Paraco.  (*See* Second Am.

Compl. ¶ 42, 26.)  The plain language of the Policy is clear that this fact alone is sufficient to

place the Armentano Action squarely within the set of claims for which the Ownership

Percentage Exclusion applies.  Moreover, Robert Armentano, as the named plaintiff in the

Armentano Action, assisted with and participated in the action, even if other shareholders are also

parties.  *See Julio & Sons Co. v. Travelers Cas. & Sur. Co. of Am.*, 684 F. Supp. 2d 330, 338

(S.D.N.Y. 2010) (holding that an insurance policy provision excluding suits by persons insured

under the policy against the insured organization applies even in the context of a derivative suit

where not all shareholders may be insured under the policy).

Paraco argues that the Court must make a factual determination as to whether the

Grandchildren's Trust is a "similarly situated" shareholder in order to determine whether the

Armentano Action is covered.  (*See* Paraco's Mem. 11–12.)  However, this factual issue does not

affect the ability of Paraco's claim to withstand Travelers's Motion To Dismiss.  Assuming the

facts as asserted by Paraco in its Complaint—that the Grandchildren's Trust is a "similarly

situated" shareholder, (*see* Second Am. Compl. ¶ 48), and not an owner of more than a 5%

interest in Paraco, (*see id.* ¶ 46)—the analysis above remains the same.[4]  Accordingly, the Court

finds that the Policy's Ownership Percentage Exclusion bars coverage of the Armentano Action.

Paraco's request for a declaratory judgment to the contrary is therefore dismissed.

2.  Reformation Claims

Both Paraco and the FCBIS Defendants ask the Court to reform the Policy to excise the

Ownership Percentage Exclusion.  (*See* Second Am. Compl. ¶¶ 29–40; FCBIS Cross-cl.

¶¶ 118–121.)  Under New York law, "mutual mistake or fraud may furnish the basis for

---

[4] Plaintiff's claim also fails if the facts were contrary to Plaintiff's pleading.  If the Trust
is not "similarly situated," it would not be a party to the Armentano Action, removing the
foothold for Plaintiff's argument.  Similarly, if the Trust owned a 5% or greater interest in
Paraco, coverage would be barred under the Ownership Percentage Exclusion.

reforming a written agreement." *Chimart Assocs. v. Paul*, 489 N.E.2d 231, 233 (N.Y. 1986); *see also George Backer Mgmt. Corp. v. Acme Quilting Co.*, 385 N.E.2d 1062, 1066 (N.Y. 1978) (describing "classic grounds" for reformation as proof of mutual mistake or unilateral mistake including fraud); *Lieberman v. Greens at Half Hollow, LLC*, 864 N.Y.S.2d 539, 540 (App. Div. 2008) ("To reform a contract based on mistake, a plaintiff must establish that the contract was executed under a mutual mistake or a unilateral mistake induced by the defendant's fraudulent misrepresentation."). But "[b]ecause the remedy of reformation presents the danger that a party, having agreed to a written contract that turns out to be disadvantageous, will falsely claim the existence of a different, oral contract, . . . New York courts have sharply limited the remedy of reformation both procedurally and substantively." *Collins v. Harrison-Bode*, 303 F.3d 429, 435 (2d Cir. 2002) (quoting *Chimart*, 489 N.E. at 234) (internal quotation marks omitted). Thus, the party advocating reformation is required to "show in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties." *Id.* (quoting *Chimart*, 489 N.E. at 234) (internal quotation marks omitted); *see also Healy v. Rich Prods. Corp.*, 981 F.2d 68, 73 (2d Cir. 1992) ("To reform a contract, mutual mistake must be established by clear and convincing evidence."); *11 King Ctr. Corp. v. City of Middletown*, 982 N.Y.S.2d 504, 505–06 (App. Div. 2014) ("To reform a written instrument based upon mutual mistake or fraud, the proponent of reformation must show, by clear and convincing evidence, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties." (internal quotation marks omitted)). Both Paraco's and the FCBIS Defendants' reformation claims assert that the Ownership Percentage Exclusion may have been included in the Policy either due to Travelers's mistake or fraud. (Second Am. Compl. ¶ 38; FCBIS Cross-cl. ¶ 120.) Therefore, to determine

12

whether the reformation claim and Cross-claim survive Travelers's Motions To Dismiss, the Court must assess whether either mistake or fraud has been sufficiently pleaded.

### a.  Mutual Mistake

New York law permits reformation of a contract due to mutual mistake "where the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement . . . such as when an inadvertent secretary's error fails to reflect the actual agreement of the parties." *Barbagallo*, 820 F. Supp. 2d at 440 (citing *Harris v. Uhlendorf*, 248 N.E.2d 892 (N.Y. 1969); *Hart v. Blabey*, 39 N.E.2d 230, 232 (N.Y. 1942)); *see also Simkin v. Blank*, 968 N.E.2d 459, 462 (N.Y. 2012) ("The premise underling the doctrine of mutual mistake is that 'the agreement as expressed, in some material respect, does not represent the meeting of the minds of the parties.'" (quoting *Gould v. Bd. of Educ. of Sewanhaka Cent. High Sch. Dist.*, 616 N.E.2d 142, 146 (N.Y. 1993))).  The law establishes a "heavy presumption that a deliberately prepared and executed written instrument manifests the true intention of the parties, and a correspondingly high order of evidence is required to overcome that presumption." *Barbagallo*, 820 F. Supp. 2d at 441 (citing *Chimart*, 489 N.E.2d at 234) (internal citations and quotation marks omitted)). "The burden of proof is on the plaintiff to establish the cause for reformation by clear and convincing evidence." *Id.* (citing *Nash v. Kornblum*, 186 N.E.2d 551, 553 (N.Y. 1962)).

Paraco pleaded that it accepted an insurance quote that Travelers's represented "match[ed] [Paraco's] expiring insurance policy with the Chubb Insurance Company," (Second Am. Compl. ¶ 23), and that the expiring Chubb policy did not have an ownership percentage exclusion, (*id.* ¶ 31), but fails to plead that *Travelers* intended to enter into an agreement without an Ownership Percentage Exclusion.  To the contrary, Paraco asserts that the fact that the Policy includes the Ownership Percentage Exclusion was "known to Travelers and the [FCBIS] [D]efendants."  (*Id.*

¶ 26.)  Paraco's Second Amended Complaint further alleges that Travelers was aware that the Policy contained the ownership exclusion, while Paraco believed it did not. (*See id.* ¶ 26 ("Unbeknownst to [P]laintiff, but known to Travelers . . . , the insurance policy issued by Travelers included the 5% ownership exclusion.").)  Paraco has therefore pleaded the absence of the underlying meeting of the minds necessary to assert mutual mistake.  *See Simkin*, 968 N.E.2d at 462.  Accordingly, Plaintiff has not sufficiently pleaded facts to assert a claim for reformation of the Policy under such a theory.

Like Paraco's Second Amended Complaint, the FCBIS Defendants' Cross-claim is also internally inconsistent with an assertion of mutual mistake, as the Cross-claim suggests Travelers's ill intent.  For example, the FCBIS Defendants allege that "Travelers buried [the Ownership Percentage Exclusion] on the eighth page of a nine page document, in small typeface, using a summary description of the exclusion and listing only the endorsement number rather than providing the endorsement itself" and did not bring the exclusion to FCBIS's attention. (FCBIS Cross-cl. ¶ 94.)  The FCBIS Defendants also claim that Travelers knew that its representation that the Policy matched the expiring Chubb policy was false, (*see id.* ¶ 95), that "Travelers was aware that any [directors and officers liability coverage] that was subject to an exclusion for actions brought by shareholders with greater than a 5% ownership interest would effectively mean that there would be virtually no coverage for any shareholder derivative actions," (*id.* ¶ 75), and that Travelers "intended and expected" FCBIS and Paraco to "inadvertently overlook the exclusion," (*id.* ¶ 96).  At best, the FCBIS Defendants raise an argument of mutual mistake in the alternative, arguing that "[*i*]*f it was* the intent of Travelers to provide coverage to Paraco that met or exceeded the coverage provided by the expiring Chubb policy . . . then the inclusion of the [Ownership Percentage Exclusion] endorsement must have

14

been a mutual mistake." (*Id.* ¶ 120.)  Moreover, a review of the materials incorporated in the FCBIS Cross-claim by reference suggest that inclusion of the Ownership Percentage Exclusion in the second policy listed in the October 2, 2009 email was not an error.[5]  Thus, the FCBIS Defendants have also failed to plead facts to assert a claim for reformation of the Policy due to mutual mistake.

### b.  Fraud

Paraco and FCBIS also allege that they were mistakenly induced to accept the Ownership Percentage Exclusion by Travelers's fraud.  A party alleging fraud in the formation of a contract must plead "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation . . . ; and (iv) resulting damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 143 (2d Cir. 2011) (citing *Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189, 195 (N.Y. 2007)); *see also Woori Bank v. Citigroup Inc.*, No. 12-CV-3868, 2013 WL 1235648, at *4 (S.D.N.Y. Mar. 27, 2013) ("[T]he elements of a common law fraud claim are '[1] a misrepresentation or a material omission of fact which was false and known

---

[5] For the purposes of resolving the instant Motion To Dismiss FCBIS's Cross-claims, the Court will adopt FCBIS's analysis that each of the four quotes offered "greater protection for an incrementally greater cost" with a pattern of offering a $1 million policy and $1 million policy plus an Additional Defense Limit, as well as a $2 million policy and $2 million policy plus an Additional Defense Limit, (*see* Welsch Decl. ¶ 14), and that the absence of the Ownership Percentage Exclusion from the third quote "makes no logical sense," (*id.* ¶ 15).  However, FCBIS's conclusion that "it was a mistake on [Travelers's] part to include the Ownership Percentage Exclusion in any of the quotes," (*id.* ¶ 16), is barely sufficient to survive a Rule 12(b)(6) motion.  Even adopting the pattern as FCBIS suggests, it is equally likely (and arguably more likely) that Travelers's mistake—if any—was the *omission* of the Ownership Percentage Exclusion from the third quote.  FCBIS's theory is even less supportable when considered in the context of the other endorsements that appear in the quotes provided by Travelers on October 20, 2009, which do not appear to follow the pattern suggested by FCBIS. (*See* Catalano Decl. Ex. N.)  In context with FCBIS's other allegations about Travelers's intent, FCBIS cannot plausibly plead that the Ownership Percentage Exclusion was included by mistake.

15

to be false by defendant, [2] made for the purpose of inducing the other party to rely on it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury.'" (all but first alteration in the original) (quoting *Premium Mort. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d. Cir. 2009))); *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009) ("The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages").[6]  In addition, under Federal Rule of Civil Procedure 9(b), "the plaintiff must allege specific facts as to the fraud, including the misleading statements, speaker, time, place, individuals involved, and specific conduct at issue."  *Johnson*, 660 F.3d at 143; *see also Woori Bank*, 2013 WL 1235648, at *4 (noting that these particular requirements derive from Fed. R. Civ. P. 9(b)).

Paraco's Second Amended Complaint asserts that Travelers's agent, Hull, represented to Paraco that "[t]he second quote matches [the] Chubb expiring policy" Paraco sought to replace, (Second Am. Compl. ¶ 19), that Paraco accepted this quote, (*id.* ¶ 22–23), that the resulting Policy contained the Ownership Percentage Exclusion not present in the expiring Chubb policy, (*id.* ¶¶ 36, 31), and that Travelers knew that the second quote and resulting Policy did not match the Chubb policy, (*id.* ¶ 26).  Furthermore, Paraco has pleaded these elements of its claims with the particularity required by Rule 9(b).  However, "[t]o prevail on a claim of fraud, a plaintiff must show that it actually relied on the purported fraudulent statements and that its reliance was

_____

[6] The FCBIS Defendants also assert a claim for "Fraudulent Misrepresentation," (FCBIS Cross-cl. ¶¶ 105–112), which the FCBIS Defendants acknowledge shares the same elements of a fraud claim under New York law, (*see* FCBIS Mem. 9–10).  *See Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 450 n.5 (2d Cir. 2013) (noting that "the elements of fraud under New York law [are]: (1) a false representation as to a material fact; (2) intent to deceive plaintiff; (3) justifiable reliance by plaintiff; and (4) pecuniary loss").

reasonable or justifiable." *KNK Enters., Inc. v. Harriman Enters., Inc.*, 824 N.Y.S.2d. 307, 307 (App. Div. 2006).  As Paraco claims to have relied "on the representations made by Hull" in accepting the Policy, (Second Am. Compl. ¶ 23), the Court must assess whether such reliance was reasonable.

Under New York law, a "party cannot claim reliance on a misrepresentation when he or she could have discovered the truth with due diligence." *Id.* (citing *East 15360 Corp.* v. *Provident Loan Soc'y of N.Y.*, 575 N.Y.S.2d 856 (App. Div. 1991)); *see also DDJ Mgmt., LLC v. Rhone Grp. LLC*, 931 N.E.2d 87, 91 (N.Y. 2010) ("[I]f the facts represented are not matters peculiarly within the [defendant's] knowledge, and the [plaintiff] has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations." (internal quotation marks omitted) (quoting *Schumaker v. Mather*, 30 N.E. 755, 757 (N.Y. 1892))).  Here, Paraco does not dispute that the Ownership Exclusion Provision clearly appears in the Policy.  Therefore, Paraco needed only to have read the Policy that it signed to discover the existence of the Exclusion.  Indeed, under New York law, a signatory to a contract has the responsibility to read the contract he or she signs and is bound by the terms that are in an executed contract.  *See Imperatore v. Putnam Lovell NBF Sec. Inc.*, No. 05-CV-4966, 2006 WL 648214, at *5 (S.D.N.Y. Mar. 15, 2006) (finding that plaintiff had the "responsibility to read and make sure he understood the contracts he signed" and rejecting plaintiff's claim that he was misled by defendant); *see also Gold v. Deutsche Aktiengesellschaft,* 365 F.3d 144, 149 (2d Cir. 2004) (noting that "a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them" (internal quotation marks omitted)); *Cash v. Titan Fin. Servs., Inc.*, 873 N.Y.S.2d 642, 645 (App. Div.

2009) (noting that "[a] party is under an obligation to read a document before he or she signs it, and a party cannot generally avoid the effect of a [document] on the ground that he or she did not read it or know its contents" (internal quotations marks omitted)).

Paraco claims that it relied on Travelers's representation that "[t]he second quote matches Chubb expiring policy" from Hall's October 2, 2009 email, (Second Am. Compl. ¶¶ 19, 23), despite subsequent communication involving multiple possible policies, (*see id.* ¶ 21)—including policies that Travelers is not accused of holding out to match the expiring Chubb policy.  Paraco further claims that the second quote from Travelers's October 2, 2009 email became the first quote in Travelers's October 20, 2009 letter.  (*See id.* ¶ 22.)  But Paraco does not assert that Travelers articulated this connection.  In addition, the October 2, 2009 email—the very communication containing the alleged misrepresentation upon which Paraco claims to have relied—attaches a proposal letter and list of endorsements applicable to each quote.  (*See* Catalano Decl. Ex. I.)  This document lists an Ownership Percentage Exclusion in the value of 5% of the named insured for the first and second quotes.  (*See id.* at 7–8.)  Travelers's October 20, 2009 proposal letter contained a list of endorsements that also includes Ownership Percentage Exclusion provisions on three of the four quotes offered, including the one ultimately selected by Paraco and FCBIS.  (*Id.* Ex. N, at 9–10.)

In defense of its purported reliance on the October 2, 2009 email statement, Paraco protests that the Policy "is 70 pages in length and . . . [t]he exclusion does not come up until page 57 of the policy."  (Paraco's Mem. 10.)  But Paraco omits the fact that the exclusion appears on a page by itself and features a header in all caps stating that "THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY."  (Travelers's Mem. Ex. 1, at 61.)  Paraco also complains that the Policy "contains language only an individual familiar with insurance

policies could comprehend." (Paraco's Mem. 10.)  Yet, courts applying general principles of

contract law have little empathy for parties who fail to read and make sure they understand the

terms of agreements they sign.  *See Copape Produtos de Pétroleo Ltda. v. Glencore Ltd.*, No. 11-

CV-5744, 2012 WL 398596, at *5 n.42 (S.D.N.Y. Feb. 8, 2012) ("It is irrelevant whether [the

plaintiff] actually reviewed the [contract containing the clause it now contests].  Parties are

presumed to know the contents of contracts that they agree to, regardless of whether they actually

are aware of their particular terms."); *Feinblum v. Liberty Mut. Ins. Co.*, No. 02-CV-5085, 2003

WL 21673620, at *2 (S.D.N.Y. July 16, 2003) ("New York courts have held that the declaration

pages of an insurance policy, once received, and particularly when received multiple times in

connection with renewals, constitute conclusive presumptive knowledge of the terms and

limitations of the policy." (internal quotation marks omitted)); *Am. Bldg. Supply Corp. v.

Petrocelli Grp., Inc.*, 979 N.E.2d 1181, 1185 (N.Y. 2012) (noting that "[v]arious [New York

state] appellate courts have held that once an insured has received his or her policy, he or she is

presumed to have read and understood it").[7]

Moreover, Paraco is a sophisticated corporate party and was contracting with Travelers,

which is similarly sophisticated, further undermining Paraco's claim of reasonable reliance.  *See

Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13-CV-3956, 2014 WL 837050, at *9

---

[7] In addition, the Court notes—but does not consider—that the dates in the insurance
policy attached to Plaintiff's original Complaint suggest that the Policy, including the Ownership
Exclusion Provision, was renewed.  (*See* Plaintiff's Verified Complaint Ex. A, at 91; *see also*
Travelers's Mem. 1 n.1).  If true, this would only make it more difficult for Paraco to plead that
its reliance on Travelers's statement was reasonable and that Paraco was unaware of the
Ownership Exclusion Provision.  *See Rogers v. Urbanke*, 599 N.Y.S.2d 697, 698 (App. Div.
1993) (rejecting the plaintiff's claim after renewal of policy); *Feinblum*, 2003 WL 21673620, at
*2 (noting that "the declaration pages of an insurance policy, once received, and particularly
when received multiple times in connection with renewals, constitute conclusive presumptive
knowledge of the terms and limits of the policy" (internal quotation marks omitted)).

(S.D.N.Y. Mar. 3, 2014) ("When plaintiffs are sophisticated parties and the statement or omission relates to a business transaction that has been formalized in a contract, New York courts are generally reluctant to find reliance on oral communications to be reasonable."); *Junk v. Aon Corp.*, No. 07-CV-4640, 2007 WL 4292034, at *7 (S.D.N.Y. Dec. 3, 2007) (same, and noting that "[t]his reluctance stems from the view that 'a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament.'" (quoting *Wurtsbaugh v. Banc of Am. Sec. LLC.,* No. 05-CV-6220, 2006 WL 1683416, at *6 (S.D.N.Y June 20, 2006))); *DDJ Mgmt.*, 931 N.E.2d at 91 (rearticulating the long-held principle that "[i]f the facts represented are not matters peculiarly within the party's knowledge, and the other party has the means available to him of knowing, by the exercise of ordinary intelligence, the truth or the real quality of the subject of the representation, he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations" (quoting *Schumaker*, 30 N.E. at 757)).  Indeed, New York courts have held that a sophisticated plaintiff can be found as a matter of law to not have adequately pleaded "justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it." *Ventur Grp., LLC v. Finnerty*, 892 N.Y.S.2d 69, 71 (App. Div. 2009) (internal quotation marks omitted).  When coupled with the strong presumption that the parties accept the written terms of the agreement they sign, regardless of whether they have actually read the agreement, *see Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013) (finding that a party "who signs or accepts a written contract is conclusively presumed to know its contents and assent to them" (quoting *Gold*, 365 F.3d at 149) (internal quotation marks omitted)), if Paraco and Travelers had negotiated the Policy directly, this case

20

law might suggest that Paraco's reliance on the October 2, 2009 email statement was unreasonable.

However, the reasonableness of Paraco's reliance is complicated by the fact that it hired FCBIS to find a new policy that would provide the same coverage as the expiring Chubb policy. (*See* Second Am. Compl. ¶ 11).  Where "a plaintiff has taken reasonable steps to protect itself against deception, it should not be denied recovery merely because hindsight suggests that it might have been possible to detect the fraud when it occurred." *DDJ Mgmt.*, 931 N.E.2d at 91.  A recent decision by the New York Court of Appeals informs the Court's decisionmaking about whether the reliance on FCBIS, as pleaded by Paraco, is reasonable under New York law. *See Am. Bldg. Supply Corp.*, 979 N.E.2d at 1181.

In *American Building Supply*, the plaintiff hired the defendant, an insurance broker, for the purpose of helping it obtain a general liability insurance policy. *See id.* at 1183.  The plaintiff "alleged that it informed [the] defendant that only employees entered the [company's] premises, never customers, as no retail business was conducted at [that] location." *Id.*  However, the defendant secured a policy which contained a clause excluding coverage for "actual or alleged bodily injury, . . . [or] personal injury . . . [to] employee[s] of any insured." *Id.* at 1183–84 (internal quotation marks omitted).  When one of the plaintiff's employees was injured at the facility and coverage under the insurance policy was denied due to this exclusion, the plaintiff sued the broker for negligence and breach of contract. *See id.* at 1184.  The Court of Appeals rejected the defendant's argument that the "plaintiff's claim is barred by its receipt of the insurance policy without complaint," holding that "an insured should have a right to look to the expertise of its broker with respect to insurance matters." *Id.* at 1185 (internal quotation marks omitted); *see also S. Bay Cardiovascular Assocs., PC v. SCS Agency, Inc.*, 963 N.Y.S.2d 688, 691

21

(App. Div. 2013) ("While it is certainly better practice for an insured to read its policy, an insured should have the right to look to the expertise of its broker with respect to insurance matters." (internal quotation marks omitted)); *Baseball Office of Comm'r. v. Marsh & McLennan*, *Inc.*, 742 N.Y.S.2d 40, 48 (App. Div. 2002) (same).  The court also noted that "[s]ince no one but employees ever entered the premises, the coverage defendant obtained, which excluded coverage for injuries to employees, hardly made sense."  *Am. Bldg. Supply Corp.*, 979 N.E.2d at 1185. Thus, the court "conclude[d] that plaintiff's failure to read and understand the policy should not be an absolute bar to recovery under the circumstances" presented.  *Id.; see also Baseball Office of Comm'r*, 742 N.Y.S.2d at 48 (holding that "[w]hile an insured's failure to read or understand the policy or to comply with its requirements may give rise to a defense of comparative negligence in a malpractice suit against the broker, the insured's conduct does not, as the motion court held, bar such an action").

Here, Paraco hired FCBIS to secure a policy to replace, and "match," the expiring Chubb policy.  (*See* Second Am. Compl. ¶ 11.)  Paraco expected that the replacement policy "would provide coverage for claims/suits alleged against" Paraco "by *any* of its shareholders." (*Id.* ¶ 25 (emphasis added).)  Therefore, because Travelers and FCBIS had access to Paraco's application for insurance and were aware of the ownership stakes held by Paraco's shareholders, (*see id.* ¶¶ 14–16; FCBIS Cross-cl. ¶¶ 72–74), the inclusion of the Ownership Percentage Exclusion in the Policy, which exempted from coverage suits by all but one of Paraco's shareholders at the time the Policy was proposed, (*see id.* ¶ 27), hardly makes sense in context.  While Paraco only discovered the Ownership Percentage Exclusion upon denial of coverage in the Armentano action, (*see id.* ¶ 28), this apparent failure to read the Policy and decision to rely on FCBIS's representations and diligence in selecting a policy that met Paraco's needs does not clearly make

Paraco's actions unreasonable.  Thus, like the plaintiff in *American Building Supply*, Paraco

should not be barred from suit.  While Paraco's reliance on FCBIS may not have been

unreasonable, there remains the unasked (and un-briefed) question of whether FCBIS's role

absolves Travelers.  Because this question needs further attention, the Court denies Travelers's

Motion without prejudice to renewal, if Travelers wishes to address this point in a subsequent

motion.

 The FCBIS Defendants' fraudulent misrepresentation claims are a different matter.

FCBIS's Cross-claim alleges that Travelers made "repeated explanations" about how Travelers's

policy would meet or exceed the coverage provided by the expiring Chubb policy.  (FCBIS

Cross-cl. ¶ 82.)  The FCBIS Defendants also specifically mention Hull's written comments on a

portion of the Chubb insurance policy, (see *id.* ¶ 79), as well as the much-cited October 2, 2009

email statement, *(see id.* ¶ 87).  FCBIS's assertions of these facts together are specific enough to

satisfy the particularity requirements of Rule 9(b), though the Court notes the FCBIS Defendants'

claim that "Hull repeatedly explained to FCBIS how the Travelers policy would meet or exceed

the coverage provided by the expiring Chubb policy," (*id.* ¶ 82), fails to state where or when these

statements were made, as Rule 9(b) requires.  *See Woori Bank*, 2013 WL 1235648, at *4.  In any

event, the FCBIS Defendants have failed to plead that their reliance on Travelers's

representations was reasonable.

 Like Paraco, the FCBIS Defendants possessed both the terms of the Policy in which the

Ownership Percentage Exclusion appears, (*see* Second Am. Compl. Ex. D, at 8–9)—including in

the form as signed by the parties—and the Chubb policy that Paraco aimed to replace, (*id.*

¶ 11–12), and thus had the means to verify the statement upon which Plaintiff claims to have

relied.  Furthermore, FCBIS was aware of the concentration of the ownership stakes in Paraco

and that only one shareholder held less than 5% of the company, as they passed this information along to Travelers, (*id.* ¶ 15, 17, Ex. A, at 15; FCBIS Cross-cl. ¶¶ 72–74).  As all the information needed to discover the alleged fraud was provided to FCBIS, it was not reasonable under New York law for FCBIS to rely on Hull's October 2, 2009 email when all FCBIS had to do was read the policies in order to have discovered the existence of the Ownership Percentage Exclusion. *See DDJ Mgmt.*, 931 N.E.2d at 91.  And, unlike Paraco, FCBIS was not relying on an agent to perform due diligence on the Policy.

The FCBIS Defendants' alleged reliance is even less reasonable when considered in light of FCBIS's obligations under New York law as Paraco's broker.  *See Am. Bldg. Supply Corp.*, 979 N.E.2d at 1185 (noting that "an insured should have a right to look to the expertise of its broker with respect to insurance matters" (internal quotation marks omitted)); *Murphy v. Kuhn*, 682 N.E.2d 972, 974 (N.Y. 1997) ("[I]nsurance agents have a common-law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so.").  Without reviewing the Policy—an act that would have made the Ownership Exclusion Provision apparent, as discussed above—FCBIS could not have been sure that it was obtaining the coverage requested by Paraco, specifically a policy that matched the expiring Chubb policy. In fact, "[i]t is precisely to perform this service . . . that the insured pays a commission to the broker." *Baseball Office of Comm'r.*, 742 N.Y.S.2d at 48 (further noting that "[a]n insured has a right to look to the expertise of its broker with respect to insurance matters" and that "it is no answer for the broker to argue, as an insurer might, that the insured has an obligation to read the policy"); *see also Silvers v. State*, 893 N.Y.S.2d 12, 14 (App. Div. 2009) (noting that "a broker is presumed to have read, and have knowledge of, the insurance policy that is being procured on behalf of the insured").  Even drawing all reasonable inferences in their favor, the FCBIS

Defendants have failed to plausibly plead reasonable reliance on Travelers's statements, especially in light of the fact that FCBIS possessed contradictory information and in light of FCBIS's duty to Paraco as its broker.  Accordingly, the FCBIS Defendants have failed to plead a claim for reformation due to fraud and these claims are dismissed.  The FCBIS Defendants' claim for fraudulent misrepresentation is dismissed, as it fails to adequately plead reasonable reliance.

    3.  <u>Negligent Misrepresentation Claims</u>

    Plaintiff and the FCBIS Defendants also bring negligent misrepresentation claims against Travelers.[8]  Under New York law, "[a] claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information."  *Woori Bank*, 2013 WL 1235648, at *5 (quoting *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011) (internal quotation marks omitted)).  Both Paraco and the FCBIS Defendants have pleaded that the information provided by Travelers was incorrect.  Therefore, the Court must only consider whether they have adequately pleaded that Travelers had a duty to impart correct information to Paraco and FCBIS, as well as Paraco and FCBIS's reasonable reliance on that information.

    "[U]nder New York law, a plaintiff may recover for negligent misrepresentation only where the defendant owes [him or her] a fiduciary duty."  *Turner v. Temptu Inc.*, No. 11-CV-4144, 2013 WL 4083234, at *8 (S.D.N.Y. Aug. 13, 2013) (internal quotation marks omitted); *see*

---

[8] Paraco's Second Amended Complaint is more vague about the nature of the claim asserted as Paraco's "Third Cause of Action," (*see* Second Am. Compl. ¶¶51–67), but Paraco's Memorandum in response to Travelers's Motion To Dismiss makes clear that this claim is for negligent misrepresentation, (*see* Paraco's Mem. at 12) ("The Third Cause of Action is for negligent misrepresentation . . . .").

*also Stewart v. Jackson & Nash,* 976 F.2d 86, 90 (2d Cir. 1992) (same); *White v. Guarente,* 372

N.E.2d 315, 319 (N.Y. 1977) (noting that a negligent statement "is not actionable unless

expressed directly, with knowledge or notice that it will be acted upon, to one whom the author is

bound by some relation of duty, arising out of contract or otherwise, to act with care if he acts at

all").  Courts applying New York law do not ordinarily find arms-length commercial transactions

to involve fiduciary relationships, unless "one party's superior position or superior access to

confidential information is so great as virtually to require the other party to repose trust and

confidence in the first party." *Turner*, 2013 WL 4083234, at *8 (internal quotation marks

omitted).  Following this principle, courts have held that, generally speaking, "[n]o special

relationship of trust or confidence arises out of an insurance contract between the insured and the

insurer . . . ." *Batas v. Prudential Ins. Co. of Am.*, 724 N.Y.S.2d 3, 7 (App. Div. 2001); *see also*

*Jane St. Holding, LLC v. Aspen Am. Ins. Co.*, No. 13-CV-2291, 2014 WL 28600, at *9 (S.D.N.Y.

Jan. 2, 2014) (same).  "However, under the right circumstances, the relationship between insurer

and insured may be imbued with elements of trust and confidence which render the relationship

more than a mere arm's length association." *Jane St. Holding*, 2014 WL 28600, at *9 (internal

quotation marks omitted); *see also Batas*, 724 N.Y.S.2d at 7 (affirming a finding that the

plaintiffs failed to allege "any other special circumstance that might indicate other than an arm's

length association or that might give rise to a fiduciary relationship" where "the only claimed

basis for such a relationship is alleged to be [the] defendants' superior knowledge of their

product, and a posting of promotional material on their web page in which they tout themselves as

a trusted name in health insurance" (internal quotation marks omitted)).

The assessment of whether such a relationship exists is normally fact-driven.  *See, e.g.,*

*Murphy*, 682 N.E.2d at 975 ("[T]he issue of whether [fiduciary duties] should be recognized and

26

given legal effect is governed by the particular relationship between the parties and is best

determined on a case-by-case basis.").  However, allegations that one party has superior

knowledge about a product or service, by itself, will not suffice to establish a fiduciary

relationship, especially between sophisticated business entities.  *See RNK Capital LLC v.*

*Natsource LLC*, 907 N.Y.S.2d 476, 478 (App. Div. 2010) ("[T]hat defendants may have had

superior knowledge of the particular type of investment products involved does not, without

more, create a fiduciary relationship, especially given that [the] plaintiffs themselves are highly

sophisticated business entities." (citation omitted)).  In *Phillips v. Am. Int'l Grp., Inc.*, 498 F.

Supp. 2d 690 (S.D.N.Y. 2007), for example, the court found that the plaintiff's allegation that the

defendant insurance company had a superior knowledge of actuarial assumptions and the

variables affecting an insurance policy was insufficient to "constitute the unique or specialized

expertise necessary to establish a special relationship."  *Id.* at 698.  Instead, to establish a

fiduciary duty, an insured must plead some extraordinary circumstance, such as efforts by an

insurer to gain the insured's trust or confidence.  *See, e.g., Murphy,* 682 N.E.2d at 975–76

(finding that "[e]xceptional and particularized situations may arise in which insurance agents,

through their conduct or by express or implied contract with customers and clients, may assume

or acquire duties in addition to those fixed at common law," and suggesting that one such

exceptional situation would be when "there was some interaction regarding a question of

coverage, with the insured relying on the expertise of the agent" but holding that the relationship

in *Murphy* did not amount to such an exceptional situation); *Batas*, 724 N.Y.S.2d at 7 (noting that

a fiduciary duty may be pleaded through "allegation[s] showing a more direct or affirmative

effort by defendants to gain plaintiffs' trust and confidence, for example the sales efforts by a

salesman or the actions of a representative," but finding that "no fiduciary relationship [existed]"

where "the only claimed basis for such a relationship [was] alleged to be defendants' superior knowledge of their product, and a posting of promotional material on their web page in which they tout themselves as a trusted name in health insurance").

In the instant case, Paraco asserts that it, FCBIS, and Travelers had a relationship in which the Parties engaged in communications for a month regarding the terms of the Policy.  (*See* Second Am. Compl. ¶¶ 54–62.)  However, the interactions Paraco describes are nothing more than arm's length deal-making.  Paraco sought a policy that would "match its expiring insurance policy with Chubb," (*id.* ¶ 54), provided Travelers with the Chubb policy and other necessary information, (*id.* ¶¶ 14–15), and then relied upon Travelers's representation to Plaintiff (through FCBIS) that one of its proposals for coverage "match[ed the] Chubb expiring policy," (*id.* ¶ 58).  But Paraco fails to allege that these interactions fall outside the normal practice when obtaining an insurance policy.  Moreover, Travelers's representations about various policies and how they compare with the Chubb policy reflect nothing more than Travelers's knowledge about the products it sells.  Paraco has not pleaded that Travelers took on an agent's role with respect to procurement of the Policy, such as if Travelers had acted as Paraco's insurance broker, or even advised Paraco on which policy of the several it provided Paraco should select.  To the contrary, Paraco alleges that it hired FCBIS as its broker and retained it to obtain insurance "to match its expiring insurance policy" with Chubb.  (*Id.* ¶ 11.)  Therefore, Paraco has not pleaded facts to support a conclusion that this was the sort of "exceptional and particularized situations" that would provide grounds for a finding that Travelers owed a duty to Paraco.  *See Murphy,* 682 N.E.2d at 975.

The FCBIS Defendants similarly have failed to plead a special relationship between Travelers and FCBIS.  The FCBIS Defendants have certainly pleaded evidence of collaboration

between Travelers and FCBIS including communication between FCBIS and Travelers about a written critique of the Chubb policy and Travelers's analysis of how the Policy would "match or exceed the coverage provide by Paraco's expiring Chubb policy," (FCBIS Cross-cl. ¶¶ 76–77), a markup of the Chubb policy in which Travelers draws comparisons between the Chubb and Travelers policies, (*id.* ¶ 79), and the assertion that Travelers "repeatedly explained to FCBIS how the Travelers policy would meet or exceed the coverage provided by the expiring Chubb policy," (*id.* ¶ 82).  However, these interactions appear to be nothing more than what one would expect between an insurance company and a broker seeking to secure a policy on behalf of its client.

In its Memorandum in Opposition to Travelers's Motion, FCBIS denies being Paraco's broker and instead claims to have been "Travelers's agent" and claims that FCBIS and Travelers have a "principal and agent" relationship that would prevent the instant transaction from having been made at "arm's-length."  (FCBIS Mem. 11–12.)  As support for this argument, FCBIS cites to the "Agency Contract" between Travelers and FCBIS, which provides that "[FCBIS] may solicit, bind, execute[,] and service policies and endorsements for classes of businesses as [Travelers] may authorize from time-to-time."  (*See* FCBIS Mem. 11; Catalano Decl. Ex. A, at 2.)

This contention is undone by FCBIS's characterization of the deal in its Answer and Cross-claims, as well as its submissions related to the instant Motion.  (*See* FCBIS Cross-cl. ¶ 67 ("FCBIS is an agency and/or brokerage involv[ed] in placing policies for numerous insurance carriers, including Travelers, on behalf of its clients, including Paraco"), ¶ 48 (admitting to Paraco's allegation that the FCBIS "[D]efendants held themselves out as having skill and expertise in procuring insurance and in advising clients at to their insurance needs"), ¶ 52 (admitting to having "arranged for and procured D&O insurance coverage for [Paraco] from Travelers"); FCBIS Mem. 6 (asserting that "FCBIS was certainly negotiating on behalf of its

client Paraco to obtain the best possible deal").)  FCBIS's claim that it was not Paraco's broker

also conflicts with Paraco's understanding of their relationship.  (*See* Second Am. Compl. ¶ 11

(claiming that [FCBIS] "was retained by [P]laintiff to obtain Directors & Officers ('D&O')

liability insurance to match its expiring policy").)  Travelers does not allege that it was explicitly

authorized to enter a policy with Paraco, as would appear to be required by the paragraph of the

Agency agreement immediately following the one upon which FCBIS relies.  (Catalano Decl. Ex.

A, at 2 (providing that "[FCBIS is] not authorized to make, alter, very or discharge any policy . . .

unless [Travelers] give[s] you written authorization.").)  In addition, while FCBIS identifies

several "Representative sample[s] of Travelers/FCBIS agency compensation documents,"

(Catalano Decl. Ex. B), it provides no such document with respect to the Policy here, nor does it

allege that it was compensated by Travelers for securing the Policy with Paraco.  The pleadings

and information provided by FCBIS establish only that it has served as Travelers's agent in some

transactions, but do not support FCBIS's contention that it acted in that capacity here.  Instead, all

the facts pleaded at this point show that FCBIS acted as Paraco's broker in securing the Policy.

New York law provides that "an insurance broker is the agent of the insured, not the

insurance company."  *Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co.*, No. 08-

CV-7745, 2010 WL 2399558, at *5 (S.D.N.Y. June 14, 2010) (internal quotation marks omitted).

"[A] broker will be held to have acted as the insurer's agent where [t]here [is some] evidence of

. . . action on the insurer's part, or facts from which a general authority to represent the insurer

may be inferred."  *U.S. Underwriters Ins. Co. v. Manhattan Demolition Co.,* 672 N.Y.S.2d 384,

385 (App. Div. 1998) (second and third alterations in original) (internal quotation marks omitted).

Here, however, none of the Parties to this Action alleges actions by Travelers that would suggest

that FCBIS was acting as its agent rather than Paraco's broker.  Indeed, as noted, Paraco itself

does not make this argument, instead claiming that FCBIS was its broker.  *See Green Door Realty Corp. v. TIG Ins. Co.,* 329 F.3d 282, 289 (2d Cir. 2003) ("[A]pparent authority is normally created through the words and conduct of the principal as they are interpreted by a third party, and cannot be established by the actions or representations of the agent." (internal quotation marks omitted)).  Accordingly, the Court finds no basis for the FCBIS Defendants' claim that FCBIS and Travelers were in a special relationship of the kind that would create a duty and provide a basis for the FCBIS Defendants' negligent misrepresentation claim against Travelers.  In addition to the FCBIS Defendants' failure to plead the existence of such a relationship, they have also failed to satisfactorily plead that FCBIS's reliance on Travelers was reasonable, as discussed above.  *See Woori Bank*, 2013 WL 1235648, at *5.  Therefore, both Paraco's and FCBIS's negligent misrepresentation claims are dismissed.

<u>4.  FCBIS Defendants' Remaining Claims</u>

Several of the Cross-claims asserted by the FCBIS Defendants do not track Paraco's claims.  Specifically, the FCBIS Defendants claim that they are indemnified in the instant suit pursuant to a contractual arrangement with Travelers, (*see* FCBIS Cross-cl. ¶¶ 122–131), that Travelers has breached an implied covenant of good faith and fair dealing with respect to the same contract, (*see id.* ¶¶ 132–139), and that Travelers's actions violate state law prohibitions on unfair and deceptive business practices, (*see id.* ¶¶ 113–117).

First, the FCBIS Defendants claim that a contract between FCBIS and Travelers contains an indemnification provision that makes Travelers "liable for any damages and other relief as may be adjudicated against the [FCBIS] Defendants, and also for the costs of the defense of this action, including reasonable attorney's fees and expenses."  (*Id.* ¶ 131.)  The FCBIS Defendants' Cross-claim refers to the operative provision of this agreement, (*see id.* ¶ 125), which appears to

31

be attached to FCBIS's Declaration, (*see* Catalano Decl. Ex. A, at 5), and which the Court may consider when deciding Defendant Travelers's Rule 12(b)(6) motion, *see Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (noting that "the court may permissibly consider documents other than the [cross-claim] in ruling on a motion under Rule 12(b)(6)" . . . if the documents "are attached to the [cross-claim] or incorporated in it by reference"). The provision incorporated into FCBIS's Cross-claims provides that Travelers will indemnify FCBIS against "all civil and administrative liability, including reasonable attorneys's fees . . . arising as a direct result of . . . [Travelers's] error or omission in preparing, processing, or servicing any policy or endorsement, except to the extent that [FCBIS] caused, contributed to, or compounded such error," (FCBIS Cross-cl. ¶ 125).

Travelers argues that the FCBIS Defendants "caused, contributed to, or compounded" any alleged error on Travelers's part that resulted in the Policy not matching the expiring Chubb policy, (Travelers's Cross-cl. Mem. 23), and that FCBIS acted as Paraco's broker and breached its duty of care in recommending the Policy to Paraco, (Travelers's Cross-cl. Reply Mem. 8). However, the plain language of the policy does not deny all indemnification in the event that the FCBIS Defendants caused, contributed to, or compounded an error, but rather limits indemnification to exclude the portion of harm to which FCBIS contributed.

Determining whether FCBIS contributed to any error—and to what extent that contribution harmed Paraco—requires a factual inquiry that the Court is unable to make at this stage of proceedings. *See, e.g.*, *Hammond v. Toy Indus. Ass'n, Inc.*, —F. Supp. 2d—, No. 11-CV-3179, 2014 WL 1266308, at *11 (S.D.N.Y. Mar. 28, 2014) (finding that there were "genuine issues of material fact as to the degree to which the accident" for which the plaintiff sought indemnification from the defendant "occurred as a result of [the plaintiff's] activities").

32

Assuming the facts as pleaded in the FCBIS Defendants' Cross-claim, specifically that an agreement between Travelers and FCBIS requires Travelers to indemnify FCBIS for liability due to Travelers's error, (FCBIS Cross-cl. ¶ 125), that Travelers committed an error in the preparation of the Policy by providing a policy that differed from the Chubb insurance policy while asserting that the policies matched, (*id.* ¶¶ 126–128), that any liability of the FCBIS Defendants would not be "on account of any action or omission on the part of [FCBIS]," (*id.* ¶ 130), and that FCBIS has been sued as a result of Travelers's error, (*id.* ¶ 129), the FCBIS Defendants have thus pleaded a plausible violation of the indemnification terms of the applicable contract. *See Pfizer, Inc. v. Stryker Corp.,* 348 F. Supp. 2d 131, 146–47 (S.D.N.Y. 2004) (noting that a plaintiff asserting the applicability of a contractual indemnification must plead (1) the making of a contractual provision providing indemnification, (2) the plaintiff's performance under that contract, (3) the defendant's breach, and (4) damages).[9]  The Court therefore denies Travelers's Motion To Dismiss with respect to the FCBIS Defendants' breach of contract claim.

---

[9] This case is also distinguishable from *Gulf Ins. Co. v. Burns Motors*, *Inc.,* 22 S.W.3d 417 (Tex. 2000), in which the Texas Supreme Court interpreted a substantively identical indemnification provision to the one in this case, where an insurance company indemnified a broker "except to the extent [that the broker] has caused, contributed to[,] or compounded such error." *Id.* at 423 (internal quotation marks omitted).  In *Burns Motors*, an insurance broker sold the plaintiff insurance policies that did not cover liability for which the plaintiff was later sued. *Id.* at 419.  The plaintiff sued the broker, alleging that he had knowingly misrepresented the coverage provided by the policies.  *Id.*  After losing this case, the broker assigned to the plaintiff his contractual indemnification rights pursuant to the broker's contract with the insurance company, and the plaintiff sought indemnification.  *Id.* at 419–20.  The court held that indemnification was excluded because the broker "fully caused, contributed to, or compounded the error that resulted in [the plaintiff's] damages," as he "knowingly misrepresented all of the false statements made to [the plaintiff], and because there is nothing in the record to show that [the plaintiff] did not rely solely on [the broker's] misrepresentations . . . ." *Id.* at 423 (internal quotation marks omitted).  Here, however, Travelers does not allege that the FCBIS Defendants committed fraud or made a knowing misrepresentation like the broker in *Burns Motors*.  (*See* Travelers's Cross-Cl. Mem. 23–24; Travelers's Cross-Cl. Reply Mem. 8.)

The FCBIS Defendants also assert a separate claim against Travelers for breach of the implied covenant of good faith and fair dealing with respect to the agency contract between Travelers and FCBIS.  (*See* FCBIS Cross-cl. ¶ 133–138.)  This claim alleges that "Travelers'[s] deceptive and misleading acts and omissions," including the representation to FCBIS that the Policy matched the expiring Chubb policy and its markup of the Policy provided to FCBIS, resulted in Paraco purchasing the Policy, (*id.* ¶134), and prevented FCBIS from "receiv[ing] the fruits of the Agency Contract, in that FCBIS was deprived of its ability to provide insurance services to its client, Paraco," (*id.* ¶ 136).

New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled."  *Harris v. Provident Life & Accident Ins. Co.,* 310 F.3d 73, 81 (2d Cir. 2002). Thus, "a claim for breach of the implied covenant of good faith can survive a motion to dismiss only if it is based on allegations different from those underlying the accompanying breach of contract claim."  *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08-CV-9116, 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009) (internal quotation marks omitted).  Accordingly, "to simultaneously plead breach of contract and implied covenant claims under New York law, a plaintiff must allege an implied duty that is consistent with the express contractual terms, but base its implied covenant theory on allegations that are distinct from the factual predicate for its contract claims."  *Id.*  The FCBIS Defendants' attempt to distinguish their claim for breach of the implied covenant of good faith and fair dealing from their contract claim by asserting that the latter concerns Travelers's "acts and omissions" in developing and negotiating the Policy, which prevented FCBIS from providing insurance services to Paraco, in violation of the spirit—but not an explicit provision—of the contract between FCBIS and Travelers.  (*See* FCBIS Cross-cl. ¶¶

34

134, 136-137.)  However, these same alleged "acts and omissions" are at the core of the FCBIS

Defendants' contractual indemnification claim—which can only apply if Travelers committed an

"error or omission," and which demands analysis of both Travelers's and FCBIS's actions to

assess the degree to which indemnification may be due.  (*Id.* ¶ 125.)  Therefore, the relief

requested by the FCBIS Defendants as to their breach of implied covenant of good faith and fair

dealing claim is identical to the relief requested under the FCBIS Defendants' contractual

indemnification claim.  (*See id.* ¶¶ 131, 139 (asserting for both claims that "Travelers is liable for

any damages and other relief as may be adjudged against the [FCBIS] Defendants, and also for

the costs of defense of this action, including reasonable attorney's fees and expenses").)  *See also*

*Long v. Marubeni Am. Corp.*, No. 05-CV-639, 2006 WL 1716878, at *1 (S.D.N.Y. June 20, 2006)

(finding that "despite [the] plaintiffs' effort to assert that the two claims arise from different facts,

the claims clearly arise from the same contract and the same breach, and seek essentially the same

relief" and holding these to be "*duplicative* claims for breach of contract under New York law").

The Court therefore grants Travelers's Motion To Dismiss this claim, but does so without

prejudice to permit the FCBIS Defendants to consider whether they can articulate a basis for this

claim that is distinct from their contractual indemnification claim.

     Lastly, the FCBIS Defendants claim that "Travelers'[s] actions constitute an unfair trade

practice under Connecticut law, [Conn. Gen. Stat. Ann.] § 42-110b, or a deceptive business

practice under New York law, [N.Y. Gen. Bus. Law § 349], or both." (FCBIS Cross-cl. ¶ 115.)

For these statutes to apply, however, a defendant's actions must have a broader impact on

consumers at large, rather than being confined to a single disputed act against a single consumer.

*See State v. Acordia*, *Inc.*, 73 A.3d 711, 728–29 (Conn. 2013) (noting that, in determining

whether a practice is unfair, the court looks to whether the practice "offends public policy;" "is

immoral, unethical, oppressive, or unscrupulous," or "causes substantial injury to consumers,"

and also noting that "isolated incidences of unfair insurance settlement practices are not so

violative of public policy as to warrant statutory intervention" (citation and internal quotation

marks omitted)); *City of New York v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 839 (N.Y. 2009)

(noting that "section 349 is 'directed at wrongs against the consuming public,'" and holding "that

plaintiffs must demonstrate that the complained-of acts or practices 'have a broader impact on

consumers at large'" (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland

Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995)).  Here, the FCBIS Defendants have only alleged

misrepresentations by Travelers with respect to the Policy and have not asserted that Travelers's

actions were illustrative of a larger pattern of conduct that might cause "substantial injury to

consumers" apart from Paraco.[10]  Indeed, the FCBIS Defendants, having asserted a violation of

these laws in their Amended Answer and Cross-claims, have offered to withdraw these causes of

action in amended pleading.  (*See* FCBIS Mem. 8.)  The Court will accordingly dismiss the state-

law unfair trade and unfair business practice claims.

---

[10] Travelers also argues that the FCBIS Defendants' claims under Conn. Gen. Stat. Ann. § 42-110b fall outside the three-year statute of limitations for bringing such an action, (Travelers's Cross-cl. Mem. 22), though the Court need not consider this issue to dismiss the state-law unfair trade and business practices claims.

### III.  CONCLUSION

For the reasons stated above, Travelers's Motions To Dismiss Paraco's Second Amended Complaint and the FCBIS Defendants' Cross-claims is granted in part and denied in part as follows:

Paraco's claim for a declaration that the Ownership Percentage Exclusion does not apply to the Armentano Action is dismissed without prejudice, as are Paraco's claim for reformation due to mutual mistake and Paraco's negligent misrepresentation claim.  Travelers's Motion is denied with respect to Paraco's fraud claims.

The FCBIS Defendants' claims for reformation due to mutual mistake or fraud, negligent misrepresentation, breach of an implied covenant of good faith and fair dealing, and unfair trade and deceptive business practices are dismissed without prejudice.  Travelers's Motion is denied with respect to the FCBIS Defendants' claims for contractual indemnification.

Paraco and the FCBIS Defendants are granted 30 days in which to file amended complaints.  The Clerk of Court is respectfully directed to dismiss the pending motions.  (*See* Dkt. Nos. 16, 27.)

SO ORDERED.

Dated:      September 30, 2014
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE