**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
PARACO GAS CORPORATION,                     :
                                            :
            Plaintiff,                      :      12-cv-5562 (KMK)
                                            :
      v.                                    :
                                            :
TRAVELERS CASUALTY AND SURETY               :      Jury Trial Demanded
COMPANY OF AMERICA,  CARNALL                :
INSURANCE, LLC a/k/a FAIRFIELD COUNTY       :
BANK INSURANCE SERVICES, ALICE LARA-        :
PIVETZ and JEFF WELSCH,                     :
                                            :
            Defendants.                     :
------------------------------------------------------------x
```

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TRAVELERS CASUALTY
AND SURETY COMPANY OF AMERICA'S MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFF PARACO GAS CORPORATION'S CLAIM AND CO-DEFENDANTS
CARNALL INSURANCE, LLC a/k/a FAIRFIELD COUNTY BANK INSURANCE
SERVICES, ALICE LARA-PIVETZ, AND JEFF WELSCH'S CROSS-CLAIMS**

*Of Counsel:*
   Alexis J. Rogoski
   Paul V. Miletic

**SKARZYNSKI BLACK LLC**
One Battery Park Plaza, 32nd Floor
New York, New York 10004
Telephone:  (212) 820-7700

*Counsel for Defendant*
*Travelers Casualty and Surety*
*Company of America*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................... iv

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.............................................. 3

   I.    PARACO RETAINS CARNALL TO PROCURE A NEW EXECUTIVE
        LIABLITY INSURANCE POLICY.................................................................. 3

   II.   CARNALL NEGOTIATES WITH TRAVELERS ON BEHALF OF PARACO........... 4

   III.  CARNALL'S CONDUCT WITH RESPECT TO THE NEGOTIATION AND
        PROCUREMENT OF THE TRAVELERS POLICY ...................................... 6

   IV.  THE ARMENTANO ACTION AND PARACO'S CLAIM UNDER THE
        TRAVELERS POLICY.................................................................................. 7

   V.   THE INDEMNITY AGREEMENT BETWEEN CARNALL AND
        TRAVELERS ................................................................................................ 7

   VI.  PARACO INITIATES THE INSTANT LITIGATION AGAINST THE
        CARNALL DEFENDANTS AND TRAVELERS.......................................... 8

   VII. THE COURT'S ORDER ON TRAVELERS' MOTIONS TO DISMISS...................... 9

ARGUMENT ......................................................................................................... 9

   I.    STANDARD FOR GRANTING A MOTION FOR SUMMARY JUDGMENT ........... 9

   II.   PARACO'S FRAUD CLAIM FAILS AS A MATTER OF LAW BECAUSE
        THE RECORD EVIDENCE ESTABLISHES THAT THE HULL EMAIL DID
        NOT CONTAIN ANY FALSE OR MISLEADING REPRESENTATIONS
        UPON WHICH PARACO RELIED.............................................................. 10

        A.  THE HULL EMAIL – WHICH IS THE SOLE TRAVELERS
             REPRESENTATION PARACO ALLEGES IS MISLEADING – DOES
             NOT CONTAIN ANY MISREPRESENTATIONS OR OMISSIONS
             UPON WHICH PARACO RELIED....................................................... 12

        B.  CARNALL'S ROLE AS PARACO'S BROKER ABSOLVES
             TRAVELERS OF ANY LIABILITY ON PARACO'S FRAUD CLAIM...............15

           1.  Carnall was Paraco's agent as a matter of law....................................17

2.   Carnall failed to exercise reasonable diligence in selecting an insurance quote on behalf of Paraco ...............................................................................18

3.   Carnall's knowledge of the Ownership Percentage Exclusion is imputed to Paraco by virtue of their agency relationship ..................................................20

4.   Any action that Paraco has lies against Carnall, not Travelers..........................21

III.   BECAUSE PARACO'S FRAUD CLAIM FAILS AS A MATTER OF LAW, THE CARNALL DEFENDANTS' CROSS-CLAIM FOR CONTRACTUAL INDEMNITY MUST ALSO FAIL ........................................................................... 22

CONCLUSION................................................................................................................ 24

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Am. Bldg. Supply Corp. v. Petrocelli Grp., Inc.*,
  19 N.Y.3d 730, 979 N.E.2d 1181 (2012)................................................................ 17, 19, 21, 22

*Am. Home Assur. Co. v. Masters' Ships Mgmt. S.A.*,
  423 F. Supp. 2d 193 (S.D.N.Y. 2006) .................................................................................... 16

*Baseball Office of Com'r v. Marsh & McLennan, Inc.*,
  295 A.D.2d 73, 742 N.Y.S.2d 40 (1st Dep't 2002) ........................................................... 17, 22

*Brown v. Eli Lilly & Co.*,
  654 F.3d 347 (2d Cir. 2011) ............................................................................................ 10, 13

*Brown v. Poritzky*,
  30 N.Y.2d 289, 283 N.E.2d 751 (1972).................................................................................. 16

*Cordiano v. Metacon Gun Club, Inc.*,
  575 F.3d 199 (2d Cir. 2009) .................................................................................................. 10

*Cristallina S.A. v. Christie, Manson & Woods Int'l Inc.*,
  117 A.D.2d 284, 502 N.Y.S.2d 165 (1st Dep't 1986) .............................................................. 16

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*,
  343 F.3d 189 (2d Cir. 2003) .................................................................................................. 14

*Evvtex Co. v. Hartley Cooper Associates Ltd.*,
  102 F.3d 1327 (2d Cir. 1996) .................................................................................... 16, 17, 18

*Fed. Deposit Ins. Corp. v. Great Am. Ins. Co.*,
  607 F.3d 288 (2d Cir. 2010) .................................................................................................. 10

*Fincher v. Depository Trust & Clearing Corp.*,
  604 F.3d 712 (2d Cir. 2010 .................................................................................................. 10

*Gaidon v. Guardian Life Ins. Co. of Am.*,
  94 N.Y.2d 330, 725 N.E.2d 598 (1999)............................................................................ 11, 14

*Gold Star, Inc. v. Lloyds of London Ins. Underwriters*,
  113 F.3d 1229 (2d Cir. 1997) .......................................................................................... 16, 18

*Hauter v. New York Prop. Ins. Underwriting Ass'n*,
  94 A.D.2d 696, 461 N.Y.S.2d 897 (2d Dep't 1983)................................................................ 23

*Hayden v. S & W Meat & Poultry,*
  221 A.D.2d 823, 634 N.Y.S.2d 226 (1995) .......................................................................... 17

*Howard Fuel v. Lloyd's Underwriters,*
  588 F. Supp. 1103 (S.D.N.Y. 1984)), *aff'd,* 489 F.3d 497 (2d Cir. 2007).............................. 16

*Iconix Brand Grp. Inc. v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
  505 F. App'x 14 (2d Cir. 2012) ........................................................................................... 14

*In re Eugenia VI Venture Holdings, Ltd. Litig.,*
  649 F. Supp. 2d 105 (S.D.N.Y. 2008) .................................................................................. 14

*In re Salomon Analyst Winstar Litig.,*
  No. 02-CV-6171, 2006 WL 510526 (S.D.N.Y. Feb. 28, 2006)............................................. 15

*Ipcon Collections LLC v. Costco Wholesale Corp.,*
  698 F.3d 58 (2d Cir. 2012) .................................................................................................. 11

*Jefferson Ins. Co. of New York v. Cassella,*
  No. 00-CV-5898, 2003 WL 23411876 (E.D.N.Y. Oct. 21, 2003).................................... 17, 21

*Johnson v. Nextel Commc'ns, Inc.,*
  660 F.3d 131 (2d Cir. 2011) ................................................................................................ 11

*Lusenskas v. Axelrod,*
  81 N.Y.2d 300, 614 N.E.2d 729 (1993)................................................................................ 16

*McGarrity v. Judd Associates, Ltd.,*
  108 A.D.2d 734, 484 N.Y.S.2d 900 (1985) .......................................................................... 23

*Portnoy v. Allstate Indem. Co.,*
  82 A.D.3d 1196, 921 N.Y.S.2d 98 (2d Dep't 2011) .............................................................. 15

*Porwick v. Fortis Benefits Ins. Co.,*
  No. 99-CV-10122, 2004 WL 2793186 (S.D.N.Y. Dec. 6, 2004) ........................................... 11

*Ribacoff v. Chubb Grp. of Ins. Companies,*
  2 A.D.3d 153, 770 N.Y.S.2d 1 (1st Dep't 2003) .............................................................. 17, 20

*Rios v. Scottsdale Ins. Co.,*
  119 Cal. App. 4th 1020 (2004) .......................................................................................19, 20

*Roe v. City of Waterbury,*
  542 F.3d 31 (2d Cir. 2008) .................................................................................................. 10

*San Diego Cty. Employees Ret. Ass'n v. Maounis,*
  749 F. Supp. 2d 104 (S.D.N.Y. 2010) .................................................................................. 15

*Schlaifer Nance & Co. v. Estate of Andy Warhol*,
119 F.3d 91 (2d Cir. 1997)), *aff'd sub nom.*, *Eugenia VI Venture Holdings, Ltd. v. Glaser*,
370 F. App'x 197 (2d Cir. 2010) ................................................................................. 14

*Stilianudakis v. Tower Ins. Co. of New York*,
68 A.D.3d 973, 889 N.Y.S.2d 854 (2d Dep't 2009) ................................................. 15

*Stuart Silver Associates, Inc. v. Baco Dev. Corp.*,
245 A.D.2d 96, 665 N.Y.S.2d 415 (1st Dep't 1997) ................................................ 12

*Travelers Indem. Co. v. Booker*,
657 F. Supp. 280 (D.D.C. 1987) ............................................................................. 18

*Vermeer Owners, Inc. v. Guterman*,
78 N.Y.2d 1114, 585 N.E.2d 377 (1991) ................................................................ 11

*Zalaski v. City of Bridgeport Police Dep't*,
613 F.3d 336 (2d Cir. 2010) ................................................................................... 10

**Statutes**

N.Y. Ins. Law § 2101(c) .......................................................................................... 16

**Other Authorities**

Restatement (Second) of Agency § 381 ................................................................... 17

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................. 9

Defendant Travelers Casualty and Surety Company of America ("Travelers" or "Defendant"), submits this Memorandum of Law in Support of its Motion for Summary Judgment on Plaintiff Paraco Gas Corporation's ("Plaintiff" or "Paraco") fraud claim (the "Fraud Claim") and Co-Defendants Carnall Insurance, LLC a/k/a Fairfield County Bank Insurance Services ("Carnall"), Alice Lara-Pivetz ("Lara"), and Jeff Welsch's ("Welsch") (collectively, the "Carnall Defendants") cross-claim for contractual indemnity (the "Indemnity Claim"), as follows ("Motion").

## PRELIMINARY STATEMENT

This case, at its core, concerns a disagreement between an insured, Paraco, and its insurance broker, Carnall, and the relevant facts concerning that disagreement are not in dispute. As of 2009, Paraco held executive liability insurance pursuant to a policy issued by Chubb Insurance Company (the "Chubb Policy") that was set to expire on October 24, 2009. Presumably dissatisfied with the coverage available under the Chubb Policy, Paraco enlisted the services of Carnall to procure a new executive liability policy better suited to its particular needs. In accordance with its obligations as an insurance broker, Carnall reached out to a number of insurers to obtain quotes for a new policy. Ultimately, Carnall entered into negotiations with Travelers, which provided Carnall three sets of insurance quotes over a three-week period. The quotes provided by Travelers included specific information regarding the coverage available under each quote, the attendant limits and retentions, and the particular exclusions to which coverage was subject. Most importantly, for purposes of this case, certain of those quotes stated clearly that they were subject to an exclusion for claims brought by 5% or greater owners of Paraco ("Ownership Percentage Exclusion"). Following its receipt of the third set of Travelers quotes, Carnall, on behalf of Paraco, agreed to purchase coverage based on one of the quotes that

both contained and disclosed the Ownership Percentage Exclusion.   Accordingly, effective October 24, 2009, coverage was bound pursuant to Travelers WRAP+ Policy No. 105314295 for the policy period October 24, 2009 to July 12, 2010 (the "Travelers Policy").   Paraco  renewed the Travelers Policy for the 2010-2011 and 2011-2012 Policy periods.

In 2012, Robert Armentano, who owned more than 5% of Paraco, initiated a lawsuit against Paraco.   Naturally, upon Paraco's tender of that claim under the Travelers Policy, Travelers denied coverage based on the Ownership Percentage Exclusion.   Paraco in turn brought suit against the Carnall Defendants and Travelers.   Paraco asserted claims against Travelers for reformation to remove the Ownership Percentage Exclusion from the Travelers Policy, a declaration of its right to coverage under the Travelers Policy, and damages for fraud. Paraco asserted claims against Carnall for breach of fiduciary duty, misrepresentation, and fraud in connection with Carnall's procurement of the Travelers Policy.

The Carnall Defendants then asserted a cross-claim against Travelers asserting contract and tort theories of recovery, including indemnification under an agency agreement between Carnall and Travelers.

Travelers filed motions to dismiss the claims asserted against it by Paraco and the Carnall Defendants.  Although the Court dismissed the majority of both Paraco's and Carnall's claims against Travelers,  it ultimately determined that, because the issue of the effect of Carnall's role as Paraco's broker on Travelers' liability had not been fully briefed, it would permit Paraco to proceed on its Fraud Claim and the Carnall Defendants to proceed on their Indemnity Claim.  In making that determination, however, the Court noted that Carnall's purported reliance on a single communication by a Travelers underwriter in selecting coverage for Paraco was clearly

unreasonable "when considered in light of [Carnall's] obligations under New York law as Paraco's broker."

The parties have conducted significant discovery since the Court issued its order on Travelers' motions to dismiss.  Notably, that discovery has confirmed that Paraco did not, and could not, have relied on any representations made by Travelers in purchasing the Travelers Policy.  In addition, discovery has confirmed the Court's earlier finding that Carnall, which owed common law fiduciary duties to Paraco, failed to exercise reasonable diligence in selecting an insurance quote for Paraco.  Accordingly, Travelers is entitled to summary judgment on Paraco's Fraud Claim.  Moreover, because the Carnall Defendants are solely responsible for any damages incurred by Paraco as a result of its purchase of the Travelers Policy, Travelers is entitled to summary judgment on the Carnall Defendants' Indemnity Claim.

Therefore, as set forth more fully herein, Travelers respectfully requests that the Court enter an order:  (1) granting Travelers' Motion for Summary Judgment; (2) dismissing the First Count of Paraco's Third Amended Complaint (*i.e.*, the Fraud Claim); (3) dismissing the Carnall Defendants' Cross' Claim against Travelers (*i.e.*, the Indemnity Claim); and (4) granting all other relief to which Traveler is entitled.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

## I. PARACO RETAINS CARNALL TO PROCURE A NEW EXECUTIVE LIABLITY INSURANCE POLICY

Paraco is a New York corporation with several shareholders, all of whom, with one exception, own more than five percent of the company.  (R. 56.1 ¶¶ 1-2.)  Paraco was previously insured pursuant to the Chubb Policy, which was set to expire on October 24, 2009.  (R. 56.1 ¶¶ 3,6.)  The Chubb Policy provided various executive liability coverages, including Directors and

---

[1] Pursuant to Local Civil Rule 56.1, Travelers has submitted a Statement of Undisputed Material Facts in support of its Motion for Summary Judgment concurrently herewith.

Officers Liability ("D&O") and Employment Practices Liability ("EPL") subject to a $25,000 self-insured retention ("SIR").  (R. 56.1 ¶ 4.)  The Chubb Policy did not contain an exclusion for claims brought by Paraco shareholders owning more than a certain equity stake in the company. (R. 56.1 ¶ 5.)

Carnall was Paraco's long standing insurance broker and undertook to procure a new executive liability insurance policy to replace the expiring Chubb Policy.  (R. 56.1 ¶¶ 7-10.) Carnall's Senior Vice President, Jeff Welsch, and Account Manager, Alice Lara-Pivetz, were responsible for seeking out quotes from prospective carriers, reviewing those quotes, and ensuring there were no gaps in Paraco's coverage.  (R. 56.1 ¶¶ 8-13.)

Lara, who was primarily responsible for the procurement process, reached out to Travelers  to advise that the Chubb Policy was expiring.  (R. 56.1 ¶¶ 14-16, 24.)  Lara was contacted by Travelers underwriter Jason Hull, who expressed an interest in obtaining Paraco's business and informed Lara that Travelers could provide executive liability coverage that could match or exceed the coverage under the Chubb Policy at a lower premium price.  (R. 56.1 ¶ 17.) On September 21, 2009, Lara sent a completed application to Hull on behalf of Paraco (the "Paraco Application"). (R. 56.1 ¶¶ 18-20.)   The Paraco Application stated that Paraco was seeking a coverage limit of $1,000,000 for D&O, EPL, and Fiduciary coverages, as well as a $25,000 SIR for D&O and EPL coverages (*i.e.*, the same SIR as under the Chubb Policy).  (R. 56.1 ¶ 21.)   The Paraco Application also included a spreadsheet, entitled "Paraco Gas Corporation, Travelers D&O Application" which listed each of the shareholders of Paraco and their respective equity stakes.  (R. 56.1 ¶ 23.)

## II.   CARNALL NEGOTIATES WITH TRAVELERS ON BEHALF OF PARACO

In October 2009, Hull sent Lara, as Paraco's broker, a series of emails attaching letters (the "Quote Letters") with different insurance quotes offering various limits of liability,

retentions, and exclusions, along with correspondingly higher or lower insurance premiums.  (R. 56.1 ¶¶ 25-26.)

On October 2, 2009, Hull sent Carnall an email (the "Hull Email") enclosing a quote letter (the "October 2 Letter") summarizing the three quotes provided in the October 2 Letter. (R. 56.1 ¶ 27.)  In particular, the Hull Email explained that "[t]he first option has the limits as requested but with a $15k retention.  The second quote matches Chubb expiring policy and the third option includes ID fraud." (*Id.*)  In other words, Hull explained that the second quote in the October 2 Letter had the same limits and retention as the Chubb Policy.  (R. 56.1 ¶ 28.)  Hull's representation in the Hull Email was reflected in the October 2 Letter, which also explained that the coverage offered pursuant to the first two quotes was subject to D&O Endorsement PDO-7001-0705 – *i.e.*, an "Ownership Percentage Exclusion" for "5%" owners of the "Named Insured."  (R. 56.1 ¶ 29.)  As Lara did not send Hull a copy of the Chubb Policy until later that day, the Hull Email was referring to the policy limits and SIR discussed in the Paraco Application. (R. 56.1 ¶¶ 27-28, 32-33.)

On October 20, 2009, Hull sent Carnall a second quote letter (the "October 20 Letter"), which contained four additional quotes.  (R. 56.1 ¶ 34.)  The terms of the first quote in the October 20 Letter were substantially the same as the terms of the second quote referenced in the Hull Email and October 2 Letter, but the premium amounts differed slightly between the two quotes.  (R. 56.1 ¶ 35.)  In addition, the first, second, and fourth quotes in the October 20 Letter disclosed the inclusion of the Ownership Percentage Exclusion. (R. 56.1 ¶ 36.)

On October 21, 2009, Hull sent Carnall a third and final quote letter (the "October 21 Letter"), which contained four additional quotes.  (R. 56.1 ¶ 38.)  The terms of the first quote of the October 21 Letter were substantially the same as the terms of the second quote of the October

2 Letter and first quote of the October 20 Letter, insofar as each of those quotes offered a $1,000,000 policy limit and $25,000 SIR, and were subject to the 5% Ownership Percentage Exclusion.  (R. 56.1 ¶ 39.)

Importantly, the Court has already found that each of Hull's Quote Letters included specimen policy forms and disclosed the Ownership Percentage Exclusion in clear and unambiguous terms.  See ECF Dkt. No. 36 at 24.  In addition, Travelers did not send any of the quotes from the October 2 Letter, October 20 Letter, or October 21 Letter directly to Paraco.  (R. 56.1 ¶ 24.)  Moreover, Paraco did not receive those quotes from Carnall until late 2012.  (R. 56.1 ¶¶ 31, 37, 40.)  Travelers and Paraco never communicated directly with one another.  (R. 56.1 ¶ 24.)

On October 24, 2009, coverage was bound and Travelers issued to Paraco the Travelers Policy, which was based on the first quote of the October 21 Letter.  (R. 56.1 ¶ 52.)  The Travelers Policy is subject to a 5% Ownership Percentage Exclusion that appears on its own page of the Travelers Policy and contains the following heading in all capital letters: "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY."  (R. 56.1 ¶ 53.)  Paraco renewed the Travelers Policy for the 2010-2011 and 2011-2012 Policy Periods.  (R. 56.1 ¶¶ 56-57.)  Notably, Paraco never read the Travelers Policy or asked for clarification regarding the Ownership Percentage Exclusion.  (R. 56.1 ¶¶ 54-59.)

## III.   CARNALL'S CONDUCT WITH RESPECT TO THE NEGOTIATION AND PROCUREMENT OF THE TRAVELERS POLICY

Because the D&O insurance market consists of sophisticated buyers and sellers of insurance with specific coverage needs, policies are highly-negotiated and tailored to such needs.  (R. 56.1 ¶¶ 41-43).  Throughout 2009, Carnall maintained a written set of Policy Checking and Verification Procedures (the "Carnall Procedures") that were in place to ensure that Carnall

6

account managers fully and completely read each of the written quotations with regard to an insurance policy.  (R. 56.1 ¶¶ 44-45.)  The Carnall Procedures contain, *inter alia*, the following policies and procedures that Carnall brokers were required to follow in procuring a new insurance policy for a client:

- "Correlate coverage information included on the application, binder, proposal, and expiring policy";

- "Once the clerical preparation and assembly of the policy is thoroughly checked, verify that the underwriting is correct. . . . Are all ordered coverages included? . . . Are there restrictive endorsements without prior agreement?"; and

- "Compare form numbers on new policy to those on expiring policy, verifying the following items: . . . Endorsements found on renewal policy but not on expiring policy."

(R. 56.1 ¶ 46.)

The Carnall Procedures notwithstanding, Carnall failed to review the quotes provided by Hull before binding coverage under the Travelers Policy on behalf of Paraco.  (R. 56.1 ¶¶ 47-51.)

## IV.    THE ARMENTANO ACTION AND PARACO'S CLAIM UNDER THE TRAVELERS POLICY

On February 28, 2012, Paraco notified Travelers that it was seeking insurance coverage under the Travelers Policy for a lawsuit captioned *Robert Armentano v. Paraco Gas Corp, et al.*, No. 13313-10, filed against Paraco in the New York State Supreme Court, County of Westchester (the "Armentano Action") by Robert Armentano, a shareholder of Paraco with a greater-than five percent equity stake in the company.  (R. 56.1 ¶ 60.)  On April 19, 2012, Travelers denied coverage for the Armentano Action based on the Ownership Percentage Exclusion.  (R. 56.1 ¶ 61.)  This Court agreed in ruling on Travelers' motion to dismiss that the Ownership Percentage Exclusion precluded coverage.

## V.    THE INDEMNITY AGREEMENT BETWEEN CARNALL AND TRAVELERS

On January 1, 2005, Carnall and Travelers entered into an "Agency Contract." (R. 56.1 ¶ 62.)  The Agency Contract contains an Indemnification Provision providing in relevant part that "Travelers will indemnify [Carnall] against all civil and administrative liability, including reasonable attorneys' fees . . . arising as a direct result of . . . [Travelers's] error or omission in preparing, processing, or servicing any policy or endorsement, except to the extent that [Carnall] caused, contributed to, or compounded such error."  (R. 56.1 ¶ 63.)

## VI.   PARACO INITIATES THE INSTANT LITIGATION AGAINST THE CARNALL DEFENDANTS AND TRAVELERS

On June 18, 2012, Paraco filed the instant action against Travelers and the Carnall Defendants in New York State Court.  Travelers removed the case to this Court.  (ECF Dkt. No. 1.)  Paraco first amended its complaint on December 18, 2012, and then on March 8, 2014 (the "Second Amended Complaint").  (ECF Dkt. No. 15.)  Pursuant to the Second Amended Complaint, Paraco asserted claims against Travelers seeking reformation of the Travelers Policy to remove the  Ownership Percentage Exclusion, a declaration of its right to coverage for the Armentano Action, and damages for fraud based on its purchase of the Travelers Policy in alleged reliance on the October 2, 2009 Hull Email (the "Fraud Claim").  *See* Second Amended Complaint at ¶¶ 29-67 (ECF Dkt. No. 15).  In addition, Paraco asserted claims against the Carnall Defendants for breach of fiduciary duty and for making false and misleading statements in connection with Carnall's procurement of the Travelers Policy.  *See id.* at ¶¶ 68-90.  On March 13, 2013, Travelers moved to dismiss the Second Amended Complaint.  (ECF Dkt. No. 16.)

On April 17, 2013, the Carnall Defendants answered the Second Amended Complaint and asserted cross-claims against Travelers for misrepresentation, deceptive business practices, reformation of the Travelers Policy, indemnity from Travelers under the Agency Contract (the

"Indemnification Claim"), and breach of the covenant of good faith and fair dealing.  (ECF Dkt. No. 23.)  On July 15, 2013, Travelers moved to dismiss the cross-claims asserted against it by the Carnall Defendants.  (ECF Dkt. No. 27.)

## VII.   THE COURT'S ORDER ON TRAVELERS' MOTIONS TO DISMISS

On November 5, 2014, the Court issued an Opinion and Order on Travelers' motions to dismiss (the "Order").  (ECF Dkt. No. 36.)  Pursuant to the Order, the Court granted Travelers' motion with respect to all of Paraco's claims against Travelers, except the Fraud Claim, and all of the Carnall Defendants' cross-claims against Travelers, except the Indemnification Claim. *See id.*[2]  In holding that Paraco and the Carnall Defendants could proceed against Travelers on those two claims,  the Court took note of "the unasked (and un-briefed) question of whether [Carnall]'s role absolves Travelers."  Order at 23 (ECF Dkt. No. 36).

On November 4, 2014, Paraco amended its complaint to reflect the terms of the Order (the "Third Amended Complaint").  (ECF Dkt. No. 41.)  Similarly, on November 21, 2014, the Carnall Defendants amended their Answer to Third Amended Complaint and Cross-Claim ("Cross-Claim") to reflect the terms of the Order.  (ECF Dkt. No. 49.)  Accordingly, the only claims presently pending against Travelers are Paraco's claim for fraud and the Carnall Defendants' claim for indemnification.

## ARGUMENT

## I.   STANDARD FOR GRANTING A MOTION FOR SUMMARY JUDGMENT

---

[2] With respect to Paraco's claims against Travelers, the Court found that the clear terms of the Travelers Policy, namely the Ownership Percentage Exclusion, barred coverage for the Armentano Action, and that there was no basis for Paraco's attempt to reform the Travelers Policy on the grounds of mistake or otherwise.  In addition, the Court found that there was no "special relationship" between Travelers and either Paraco or the Carnall Defendants as needed to support those parties' negligent misrepresentation claims against Travelers.  Finally, the Court found that the Carnall Defendants failed to allege any action by Travelers that could give rise to a breach of the implied covenant of good faith and fair dealing or a violation of state law prohibitions on deceptive business practices.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.'" *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)). "The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence . . . on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) "and 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quoting *Fed. Deposit Ins. Corp. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

## II.   PARACO'S FRAUD CLAIM FAILS AS A MATTER OF LAW BECAUSE THE RECORD EVIDENCE ESTABLISHES THAT THE HULL EMAIL DID NOT CONTAIN ANY FALSE OR MISLEADING REPRESENTATIONS UPON WHICH PARACO RELIED

In its sole remaining claim, Paraco alleges that Travelers fraudulently induced Paraco to accept the Ownership Percentage Exclusion in the Travelers Policy. *See* Third Amended Complaint at ¶¶ 29-45 (ECF Dkt. No. 41). Specifically, Paraco alleges that the October 2, 2009 Hull Email misrepresented the extent of coverage being offered by Travelers and that Paraco

relied on that misrepresentation in purchasing the Travelers Policy.  *See id.*[3]  Although the Court found Paraco's allegations to be sufficient for pleading purposes, taking them as true as it is required to do on a motion to dismiss, the discovery process has confirmed that those allegations are unsupported by any record evidence.   In particular, the record evidence conclusively establishes that the Hull Email – the sole Travelers representation upon which Paraco claims to have relied – contains no misrepresentations or omissions upon which Paraco did rely or could have reasonably relied as a matter of law.  Moreover, even if, as the Court suggested in its Order, Paraco is entitled to claim reasonable reliance on Carnall as its insurance broker and agent, Carnall's role as broker and its conduct in procuring the Travelers Policy absolve Travelers of any liability with respect to Paraco's Fraud Claim.   Therefore, as set forth more fully herein, Travelers is entitled to judgment as a matter of law on the Fraud Claim.

Under New York law, "[a] party alleging fraud in the formation of a contract must plead '(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation . . .; and (iv) resulting damages.'"  Order at 15-16 (ECF Dkt. No. 36) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 143 (2d Cir. 2011)), *accord Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012).  In New York, "[t]he elements of fraud are narrowly defined, requiring proof by clear and convincing evidence."  *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 349-50, 725 N.E.2d 598, 607 (1999) (citing *Vermeer Owners, Inc. v. Guterman*, 78 N.Y.2d 1114, 1116, 585 N.E.2d 377, 378 (1991)); *see also Porwick v. Fortis Benefits Ins. Co.*, No. 99-CV-10122, 2004 WL 2793186, at *5 (S.D.N.Y. Dec. 6, 2004) ("In the absence of fraud or other wrongdoing on the part of the other contracting party, the receipt of an insurance policy by the policyholder

---

[3] Paraco does not allege that Travelers owed Paraco any duties as an agent or fiduciary.

constitutes conclusive presumptive knowledge of the policy's terms and limits, and the holder's assent thereto.") (collecting cases).

A.   **The Hull Email – Which Is The Sole Travelers Representation Paraco Alleges Is Misleading – Does Not Contain Any Misrepresentations Or Omissions Upon Which Paraco Relied**

Paraco appears to argue that, by stating in the Hull Email that "[t]he second quote matches Chubb expiring policy," Travelers falsely represented that the second quote in the October 2 Letter provided coverage identical to the expiring Chubb Policy (which did not contain an Ownership Percentage Exclusion). *See* Third Amended Complaint at ¶¶ 35-38 (ECF Dkt. No. 41). This contention, however, is meritless and must fail as matter of law for at least the following four reasons.

First, Paraco cannot establish reasonable reliance on Hull's statement in the Hull Email because it never received or reviewed the Hull Email before purchasing the Travelers Policy. Indeed, the Hull Email was transmitted to Lara and never seen by anyone at Paraco until 2012 – long after Paraco initially purchased the Travelers Policy and renewed it twice. (R. 56.1 ¶¶ 27, 31, 37, 40.) Thus, because Travelers represented nothing to Paraco, there can be no misrepresentation by Travelers on which Paraco relied, justifiably or otherwise. *See Meisel v. Grunberg*, 651 F. Supp. 2d 98, 118 (S.D.N.Y. 2009) (to state a claim for fraud under New York law, "Plaintiff must also show that his <u>actual</u> reliance on the misrepresentations was reasonable.") (emphasis added) (citing S*tuart Silver Associates, Inc. v. Baco Dev. Corp.*, 245 A.D.2d 96, 665 N.Y.S.2d 415 (1st Dep't 1997))*.*

Second, Paraco's interpretation of Hull's statement to Lara as referring to "matching" the entire Chubb Policy is simply untenable in light of the evidence adduced during discovery. As a preliminary matter, Paraco has alleged that "[a]s part of the application process, Travelers was provided with a copy of [Paraco's] expiring insurance policy with [Chubb]." *See* Third

Amended Complaint at ¶ 14 (ECF Dkt. No. 14).  While that statement is technically correct, it omits material details regarding the timing of the application and negotiation process.  Indeed, although Hull received the Paraco Application prior to sending the Hull Email on October 2, 2009, Lara did not send Hull a copy of the Chubb Policy until later that day, after Hull's October 2 email.  (R. 56.1 ¶¶ 32-33.)    Hull testified the reference in the Hull Email was to the limits and retention of the Expiring Chubb Policy of which Hull was aware by virtue of the Paraco Application.  (R. 56.1 ¶ 20.)  Thus, because the Paraco Application disclosed only the limits, retention and coverages of the Chubb Policy, and Hull did not have a copy of the Chubb Policy at the time he sent the Hull Email, no reasonable juror could infer that Hull's statement was referring to anything other than the policy limits and retention of the Chubb Policy – as that was the only information Travelers had at that time.  *See Brown*, 654 F.3d at 358 (to defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts.").  In addition, Carnall and Travelers continued to negotiate the coverage details over the next three weeks, and Hull issued two more quote letters without ever repeating the representation at issue in the October 2 Email.  (R. 56.1 ¶¶ 34-40.)

Third, Paraco's interpretation of Hull's representation regarding the second quote in the October 2 Letter is entirely inconsistent with the nature of the market for executive liability insurance policies.  Indeed, as Hull testified at his deposition, the D&O insurance market consists of sophisticated buyers and sellers of insurance who negotiate at arm's length.  (R. 56.1 ¶ 41).  Accordingly, it would be absurd for an experienced broker such as Carnall to assume that any two policies issued by different carriers would provide exactly the same coverage without at least comparing the terms of those policies.  (R. 56.1 ¶ 43).  Similarly, Lara testified to the

unique nature of the marketplace for D&O insurance policies, which she described as "much more complicated than a standard property policy or general liability policy."  (R. 56.1 ¶ 42). Thus, it would have *per se* unreasonable for Carnall to assume that the Chubb Policy and Travelers Policy provided exactly the same coverage subject to the same terms, conditions, and exclusions based on the language in the Hull Email.  *See In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 118 (S.D.N.Y. 2008) ("It is well-established that '[w]here sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance.'") (quoting *Schlaifer Nance & Co. v. Estate of Andy Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)), *aff'd sub nom.*, *Eugenia VI Venture Holdings, Ltd. v. Glaser*, 370 F. App'x 197 (2d Cir. 2010).  While Paraco may argue that this is a question of fact for the jury, the Court should not entertain such an argument where, as here, the proof of that position is totally speculative and the standard for such proof – clear and convincing evidence – is exceptionally lofty.  *See Gaidon*, 94 N.Y.2d at 349-50.

Finally, as the Court has already found, each of Hull's Quote Letters included specimen policy forms and disclosed the Ownership Percentage Exclusion in clear and unambiguous terms.  *See* Order at 3-4 (ECF Dkt. No. 36). Similarly, the Travelers Policy presented the Ownership Percentage Exclusion on its own page with a heading in all capital letters imploring the insured to "PLEASE READ IT CAREFULLY."  (R. 56.1 ¶ 53).  It is well-settled that one cannot base a misrepresentation claim on information that is actually disclosed. *See Iconix Brand Grp. Inc. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 505 F. App'x 14, 17 (2d Cir. 2012) (affirming dismissal of securities fraud claim for lack of reliance where it was "undisputed that the purportedly secret 'put' option is unambiguously disclosed on the first page of the relevant

offering memorandum and then explained in greater detail throughout that document."); *Emergent Capital Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 195 (2d Cir. 2003) ("[A]s a sophisticated participant in the bank debt market, the buyer should have, and easily could have, protected itself from misrepresentation by demanding that it see the report prior to a closing."); *San Diego Cty. Employees Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104, 121 (S.D.N.Y. 2010) (explaining that a securities fraud claim "must be dismissed as a matter of law where the cautionary language provided 'explicitly warns of or directly relates to the risk that brought about a plaintiff's loss.'") (quoting *In re Salomon Analyst Winstar Litig.*, No. 02-CV-6171, 2006 WL 510526, at *11 (S.D.N.Y. Feb. 28, 2006)).   Accordingly, Travelers' disclosure of the Ownership Percentage Exclusion in the Quote Letters and the Travelers Policy is clearly inconsistent with an intent to deceive Paraco as a matter of law.   Moreover, "where, as here, [the insured] received the subject policy years prior to the incident for which coverage was sought, and repeatedly renewed the policy as originally written, 'the [insured] is conclusively presumed to have read and assented to its terms.'"   *Portnoy v. Allstate Indem. Co.*, 82 A.D.3d 1196, 1198, 921 N.Y.S.2d 98, 100 (2d Dep't 2011) (quoting *Stilianudakis v. Tower Ins. Co. of New York*, 68 A.D.3d 973, 974, 889 N.Y.S.2d 854 (2d Dep't 2009)).   Accordingly, Paraco has no factual or legal basis for claiming that Travelers acted with the requisite intent to sustain its Fraud Claim.

Therefore, Travelers is entitled to judgment as a matter of law on Paraco's sole remaining claim, the Fraud Claim.

### B.   Carnall's Role As Paraco's Broker Absolves Travelers Of Any Liability On Paraco's Fraud Claim

In the Order, the Court flagged as unasked and un-briefed the issue of whether Carnall's role as Paraco's insurance broker absolves Travelers of liability for Paraco's Fraud Claim.  *See* Order at 23 (ECF Dkt. No. 36).  The short answer is "Yes."  Under New York law as applied to

the undisputed facts of this case, Carnall was at all relevant times acting as a common law agent of its principal, Paraco, for purposes of obtaining new executive liability insurance coverage. Because there is no dispute that Carnall was under an obligation to procure the coverage requested by Paraco, but failed to do so, the Carnall Defendants are solely liable for the damages, if any, incurred by Paraco as a result of its purchase of the Travelers Policy.

It is well-settled under New York law that an insurance broker is an agent of the insured. *See* N.Y. Ins. Law § 2101(c); *Evvtex Co. v. Hartley Cooper Associates Ltd.*, 102 F.3d 1327, 1331-32 (2d Cir. 1996) ("Both New York insurance law and common law provide that insurance brokers act as agents on behalf of the insured where they are "employed by the insured to procure insurance."); *Am. Home Assur. Co. v. Masters' Ships Mgmt. S.A.*, 423 F. Supp. 2d 193, 222 (S.D.N.Y. 2006) ("[T]he broker acts on behalf of the insured, not the insurance company.") (citing *Howard Fuel v. Lloyd's Underwriters*, 588 F. Supp. 1103, 1108 (S.D.N.Y. 1984)), *aff'd*, 489 F.3d 497 (2d Cir. 2007). "The assumption that a broker is the agent of the insured 'can be overcome, but only by a showing of exceptional circumstances indicating that, in the particular facts of the case . . . a broker's arrangement with the insurer is such that this standard relationship should not be assumed.'" *Gold Star, Inc. v. Lloyds of London Ins. Underwriters*, 113 F.3d 1229 (2d Cir. 1997) (quoting *Evvtex*, 102 F.3d at 1332).

Accordingly, an insurance broker "enters into a fiduciary relationship with a principal requiring that an agent exercise reasonable diligence." *Evvtex*, 102 F.3d at 1332 (citing *Brown v. Poritzky*, 30 N.Y.2d 289, 283 N.E.2d 751, 754 (1972), *overruled on other grounds*, *Lusenskas v. Axelrod*, 81 N.Y.2d 300, 614 N.E.2d 729 (1993)). Similarly, "[w]ithin the exercise of reasonable skill, care and diligence, an agent has a duty to disclose information." *Evvtex*, 102 F.3d at 1332

(citing *Cristallina S.A. v. Christie, Manson & Woods Int'l Inc.*, 117 A.D.2d 284, 502 N.Y.S.2d 165, 171 (1st Dep't 1986)). Specifically:

> an agent is "subject to a duty to use reasonable efforts to give his principal information which is relevant to affairs entrusted to him and which, as the agent has notice, the principal would desire to have and which can be communicated without violating a superior duty to a third person."

*Evvtex*, 102 F.3d at 1332 (quoting Restatement (Second) of Agency § 381); *see also Am. Bldg. Supply Corp. v. Petrocelli Grp., Inc.*, 19 N.Y.3d 730, 736, 979 N.E.2d 1181, 1185 (2012) ("While it is certainly the better practice for an insured to read its policy, an insured should have a right to 'look to the expertise of its broker with respect to insurance matters.'") (quoting *Baseball Office of Com'r v. Marsh & McLennan, Inc.*, 295 A.D.2d 73, 82, 742 N.Y.S.2d 40, 48 (1st Dep't 2002)).

Moreover, an insured "is bound, as principal, by notice or knowledge acquired by the agent." *Ribacoff v. Chubb Grp. of Ins. Companies*, 2 A.D.3d 153, 155, 770 N.Y.S.2d 1 (1st Dep't 2003) (citing *Hayden v. S & W Meat & Poultry*, 221 A.D.2d 823, 825, 634 N.Y.S.2d 226 (1995)); *see also Jefferson Ins. Co. of New York v. Cassella*, No. 00-CV-5898, 2003 WL 23411876, at *4 (E.D.N.Y. Oct. 21, 2003) ("[T]he Court concludes that [the broker]'s knowledge is imputable to [the insured] and that the knowledge was effective to put him on notice of the Endorsement.").

### 1.    Carnall was Paraco's agent as a matter of law

There is no dispute that, in 2009, Paraco retained Carnall as its insurance broker for the purpose of procuring a new executive liability insurance policy.  (R. 56.1 ¶ 11).  Indeed, the Carnall Defendants testified that Paraco was its client and that Carnall was acting on behalf of Paraco when it initiated negotiations with Travelers in 2009.  (R. 56.1 ¶ 12).  Moreover, Paraco's corporate representative testified that Paraco considered Carnall to be its broker and "utilize[d]

them as our experts in the area to ensure that the language is what we're expecting." (R. 56.1 ¶ 13). Accordingly, because Carnall was "employed by the insured to procure insurance," Carnall was Paraco's broker as a matter of New York law. *Evvtex*, 102 F.3d at 1331-32. Moreover, there is absolutely no evidence of "exceptional circumstances" sufficient to overcome the presumption of this "standard relationship." *Gold Star*, 113 F.3d at 1229.[4]

### 2. Carnall failed to exercise reasonable diligence in selecting an insurance quote on behalf of Paraco

As Paraco's agent, Carnall was under a fiduciary duty to exercise reasonable diligence in reviewing the information provided by Travelers and conveying to Paraco that information which it "would desire to have and which can be communicated." *Evvtex*, 102 F.3d at 1332. Thus, by purportedly relying on the Hull Email in selecting the Travelers Policy on behalf of Paraco, Carnall failed to exercise the requisite level of diligence owed to Paraco. Notably, the Court has already determined that Carnall's alleged reliance on the Hull Email quotation was unreasonable "when considered in light of [Carnall's] obligations under New York law as Paraco's broker." Order at 24 (ECF Dkt. No. 36). Paraco has not, and cannot, point to any evidence to rebut that finding. To the contrary, the deposition testimony of the Carnall Defendants only highlights the unreasonableness of Carnall's conduct. For example, Lara testified that, with respect to the actual quotes provided by Hull, "there's a lot of fluff in there" and explained that she "read up to page four and skimmed the balance of the quote," which covers only the premium, limits, and retention, but did not read the actual endorsements. (R. 56.1 ¶ 49). Notably, Lara's failure to read the actual terms of the quotes provided by Hull was

---

[4] What constitutes "special circumstances" sufficient to overcome the presumption is not clearly defined. In the leading case, *Travelers Indem. Co. v. Booker*, 657 F. Supp. 280, 286 (D.D.C. 1987), the D.C. Circuit suggested that the party seeking to prove that the broker is an agent of the <u>insurer</u> would need to show, at a minimum, the existence of arrangements between the broker and insurer that "differ in any material respect from the normal practice" in that market. That point is academic, however, as Paraco has not alleged that Carnall was acting as an agent of Travelers.

impermissible in light of the Carnall Procedures, which required that Carnall's account managers correlate coverage information in the expiring and renewal policies, "verify that . . . all ordered coverages [are] included," verify "restrictive endorsements without prior agreement," and verify "Endorsements found on renewal policy but not on expiring policy."  (R. 56.1 ¶¶ 44-46).  Given that Carnall's conduct was deficient even by its own internal standards, its conduct was clearly deficient as a matter of agency law.  *See Am. Bldg. Supply Corp.*, 19 N.Y.3d at 736 (holding that an insured is entitled to rely on the expertise of its broker with respect to insurance matters).

A California Court of Appeal decision, *Rios v. Scottsdale Ins. Co.*, 119 Cal. App. 4th 1020 (2004), provides an effective illustration of this principle.  In *Rios*, the insured hired a broker to procure an insurance policy for her jewelry store.  *See id.* at 1023-24.  Although the insured requested that the policy contain coverage for theft, the policy obtained by the broker did not include such coverage.  *See id.* at 1024.  Several months later, the insured's store was burglarized.  *See id.*  The insured tendered the claim to her broker, which in turn referred the claim to the insurers.  *See id.*  The insurers denied coverage because the policy did not cover loss from theft.  *See id.*  Thereafter, the insured brought suit against the insurers, alleging, *inter alia*, negligent misrepresentation and fraud.  *See id.*  The trial court granted summary judgment in favor of the insurers on the grounds that the insured's "insurance broker[] was primarily responsible for failing to obtain the type of policy requested, which should have included coverage for theft."  *Id.*  The Court of Appeal affirmed, holding in relevant part that:

> [E]ven if there were any misrepresentations, [the insurers] are blameless. Neither insurer communicated directly with [the insured], as all communications went through [insured]'s broker. Moreover, [the insured]'s notions of agency fail. As previously discussed and as established in [the broker]'s deposition, in the declaration by an underwriter for [insurer], in the terms of brokerage agreement between [the broker and insurer], and in various legal authorities, as a matter of law, [the broker] was not an

> agent of the insurers. He had no authority to alter the terms of coverage or to present a policy other than that offered by the insurer.

*Id.* at 1028-29.

The reasoning expressed by the court in *Rios* is fully applicable to the facts of this case. Indeed, like the broker in *Rios*, Carnall was at all relevant times an agent of Paraco, not Travelers, who had no authority to alter the terms of coverage presented by Travelers. *See* Section II.B.1, *infra*. In addition, like the insurers in *Rios*, Travelers never communicated directly with Paraco and instead presented quotes through Carnall. (R. 56.1 ¶ 24.) Moreover, like the insurers in *Rios*, Travelers had no reason to believe that Carnall would not review the information provided by Hull in light of the coverage needs communicated by Paraco to Carnall and select a quote that was suited to those needs. (R. 56.1 ¶¶ 7-23.) Thus, this Court should hold that, consistent with New York law and the reasoning in *Rios*, Carnall's failure to obtain the type of coverage requested by its principal, Paraco, absolves Travelers of any liability to Paraco on the fraud claim.

### 3.   Carnall's knowledge of the Ownership Percentage Exclusion is imputed to Paraco by virtue of their agency relationship

It is not disputed that each of the Quote Letters Hull sent to Carnall contained detailed information concerning each of the proposed quotes, including which quotes were subject to the Ownership Percentage Exclusion. (R. 56.1 ¶¶ 27-40.) In addition, it is not disputed that the quote in the October 21 Quote Letter, upon which the final Travelers Policy issued to Paraco was based, contained the Ownership Percentage Exclusion. (R. 56.1 ¶ 39.) Finally, it is not disputed that coverage afforded by the Travelers Policy issued to Paraco was subject to the Ownership Percentage Exclusion. (R. 56.1 ¶ 53.) Indeed, as the Court previously observed, "all [Carnall] had to do was read the policies." Order at 24 (ECF Dkt. No. 36). Therefore, because Carnall

was clearly on notice of the Ownership Percentage Exclusion at the time it procured the Travelers Policy, that notice is imputed to Paraco as a matter of agency law.  *See Ribacoff*, 2 A.D.3d 153 at 155 ("Plaintiffs are thus bound by their agent's understanding that insurance coverage for jewelry stock was not intended to be included in the Federal policy[.]"); *Cassella*, 2003 WL 23411876, at *4 ("In light of the foregoing, the Court concludes that [the broker]'s knowledge is imputable to [the insured] and that the knowledge was effective to put him on notice of the Endorsement. . . .  Therefore, the Court grants summary judgment to Plaintiff on the issue of first party coverage. The Court realizes that this is a harsh result for [the insured]. After all, the parties have identified no evidence that the insured received any actual notice from [the broker] nor [insurer] of the restrictions instituted by the Endorsement. Nonetheless, the law on [the insured]'s imputed knowledge is clear and the outcome of this motion is inevitable.").

### 4.      Any action that Paraco has lies against Carnall, not Travelers

From the undisputed record in this case, there is no viable legal theory under which Travelers may be held liable to Paraco on the Fraud Claim.  Rather, Paraco's only viable cause of action, if any, is against the Carnall Defendants, upon whom Paraco relied to procure an executive liability policy suited to its particular coverage needs.   Indeed, this Court implicitly acknowledged this position in deciding Travelers' original motion to dismiss Paraco's Fraud Claim.   In holding that Paraco was entitled to proceed on its Fraud Claim against Travelers in light of the un-briefed issue of Carnall's fiduciary duties as Paraco's broker, the Court relied largely on the Court of Appeals decision in *Am. Bldg. Supply Corp.  See* Order at 21-22 (ECF Dkt. No. 36).   In that case, the insured hired a broker to secure a general liability insurance policy that would cover injury to its employees.  *Am. Bldg. Supply Corp.*, 19 N.Y.3d at 734.  The broker, however, procured a policy that excluded coverage for personal injuries to the insured's

employees.  *See id.*  The insurer denied coverage for a claim involving an injury to one of the insured's employees, and the insured brought suit against the broker (but not the insurer) for, *inter alia*, negligence in procuring the policy.  *See id.* at 735. The trial court granted summary judgment for the broker and the insured appealed.  *See id.*  In reversing the trial court's decision and finding that issues of fact precluded summary judgment, the court first observed the tension under New York law concerning the extent to which an insured is entitled to rely on its broker's representations about the coverage afforded in a policy procured by the broker.  *See id.* at 736 ("Various appellate courts have held that once an insured has received his or her policy, he or she is presumed to have read and understood it and cannot rely on the broker's word that the policy covers what is requested. . . .  However, other appellate courts have been more forgiving and have held that receipt and presumed reading of the policy does not bar an action for negligence against the broker.") (citations omitted).  The court proceeded to hold that

> The facts as alleged here, that plaintiff requested specific coverage and upon receipt of the policy did not read it and lodged no complaint, should not bar plaintiff from pursuing this action. While it is certainly the better practice for an insured to read its policy, an insured should have a right to "look to the expertise of its broker with respect to insurance matters."  The failure to read the policy, at most, may give rise to a defense of comparative negligence but should not bar, altogether, an action against a broker.

*Id.* at 736-37 (quoting *Baseball Office of Com'r*, 295 A.D.2d at 82) (internal citations omitted).

Therefore, the Paraco Fraud Claim must fail as a matter of law on this undisputed evidentiary record.

## III.   BECAUSE PARACO'S FRAUD CLAIM FAILS AS A MATTER OF LAW, THE CARNALL DEFENDANTS' CROSS-CLAIM FOR CONTRACTUAL INDEMNITY MUST ALSO FAIL

In its Cross-Claim, Carnall demands that Travelers indemnify it against Paraco's claims pursuant to the Indemnification Provision of the Agency Contract.  *See* Cross-Claim at ¶¶ 48-91

(ECF Dkt. No. 49).   Carnall argues that certain representations made by Travelers to the Carnall Defendants – namely the portion of the Hull Email stating that the first quote "matches Chubb expiring policy" and various statements by Hull suggesting that the Travelers Policy would provide the same coverage as the Chubb Policy – constitute "an error or omission in preparing, processing, or servicing any policy or endorsement." *Id.* at ¶¶ 79, 85-88.   In particular, Carnall asserts that, with respect to the Ownership Percentage Exclusion, Carnall "could not have reasonably anticipated that such a significant exclusion [sic] would be included in the Travelers policy." *Id.* at ¶ 79.

The Court should reject Carnall's attempt to evade liability for its own failure to procure the insurance coverage requested by its client and principal, Paraco.  Indeed, the Indemnification Provision of the Agency Contract specifically limits Travelers' indemnification obligations to exclude the portion of harm to which Carnall "caused, contributed to, or compounded."  (R. 56.1 ¶ 39.)   As established in Section II, *infra*, any harm that Paraco suffered as a result of the Ownership Percentage Exclusion is attributable entirely to Paraco's own failure to read the Travelers Policy containing that exclusion and/or Carnall's failure to review the quotes and Travelers Policy in full and to discharge the common law agency duties owed to Paraco. Accordingly, because Travelers could not have, as a matter of law, caused any of Paraco's alleged damages, the Indemnification Provision of the Agency Contract provides no legal basis upon which Travelers may be found liable to Carnall.  *See McGarrity v. Judd Associates, Ltd.*, 108 A.D.2d 734, 735, 484 N.Y.S.2d 900, 901 (1985) ("The admissions of the [broker] make it clear that it did not submit the application for insurance coverage on [insured]'s real property to the [insurer] until after the [insured] suffered the fire loss for which he seeks compensation from the [broker] and [insurer] and that such insurance coverage was thereafter denied by the

[insurer]. Under such circumstances, the [insurer] can have no liability to the defendant and third-party plaintiff [broker].") (citing *Hauter v. New York Prop. Ins. Underwriting Ass'n*, 94 A.D.2d 696, 461 N.Y.S.2d 897 (2d Dep't 1983)).

Therefore, Travelers is entitled to summary judgment on the Carnall Defendants' Cross-Claim.

## CONCLUSION

For all the foregoing reasons, Travelers respectfully requests that the Court enter an order:  (1) granting Travelers' Motion for Summary Judgment; (2) dismissing the First Count of Paraco's Third Amended Complaint (*i.e.*, the Fraud Claim); (3) dismissing the Carnall Defendants' Cross' Claim against Travelers (*i.e.*, the Indemnity Claim); and (4) granting all other relief to which Travelers is entitled.

Dated:  December 18, 2015

Respectfully submitted,

**SKARZYNSKI BLACK LLC**

By:  s/ *Alexis J. Rogoski*
      Alexis J. Rogoski
      Paul V. Miletic

Alexis J. Rogoski
Paul V. Miletic
One Battery Park Plaza, 32nd Floor
New York, New York 10004
Tel: (212) 820-7700

*Counsel for Defendant*
*Travelers Casualty and Surety*
*Company of America*

## <u>CERTIFICATE OF SERVICE</u>

I, Alexis J. Rogoski, one of the Defendant's attorneys, hereby certify that on December 18, 2015, I caused true and correct copies of the foregoing **Memorandum of Law in Support of Defendant Travelers Casualty and Surety Company of America's Motion for Summary Judgment on Plaintiff Paraco Gas Corporation's Claim and Co-Defendants Carnall Insurance, LLC a/k/a Fairfield County Bank Insurance Services, Alice Lara-Pivetz, and Jeff Welsch's Cross-Claims** to be served via email and U.S. mail on all attorneys of record.


/s/ *Alexis J. Rogoski*
Alexis J. Rogoski

4825-7041-3868